FINOMORE, APPELLEE, *v.* EPSTEIN ET AL., APPELLANTS.

(No. 47108—Decided May 7, 1984.)

*Rini & Cosiano* and *Martin A. Rini,* for appellee Fred A. Finomore.

*Sindell, Sindell & Rubenstein* and *Thomas C. Pavlik,* for appellants Melvin Epstein et al.

NAHRA, J. Appellants owed appellee a balance of approximately $11,680 for concrete work which appellee had performed for appellants. In satisfaction of that debt, appellee agreed to accept certain properties owned by appellants. In fact, appellee asked appellants for the two lots in question. Appellants gave appellee legal descriptions of the lots prior to the property transfer. Appellee directed his attorney to prepare quit-claim deeds for the transfer of the properties. Neither appellee nor his attorney did a title check on the properties, although appellee was aware that he could have checked the public records.

Appellee testified that at the time of the transfer, appellant told him that the lots were free and clear. Appellee's wife corroborated her husband's testimony. Appellant Melvin Epstein denied that he said the properties were free and clear and testified that he advised appellee that Ohio Savings & Loan Association ("Ohio Savings") had a small outstanding mortgage on the properties. The properties were worth approximately $14,000. Appellant Epstein was unsure of the amount of the outstanding mortgages.

On February 2, 1973, the quit-claim deeds were executed. In exchange for the properties, appellee also signed a release discharging appellants from any liability which may arise from the cement contracting work. Appellee did not record his deeds until September 20, 1973.

In or around 1975 or 1976, appellee learned that his title to one of the lots was defective. Ohio Savings had foreclosed on the property and later sold the property to third parties. Appellee brought suit on April 29, 1977, alleging fraud in the transfer of the property. Appellee learned after suit was filed that the second lot had also been foreclosed.

Appellee's claim was originally heard at arbitration wherein he was awarded $10,000. Appellants appealed, and the matter was heard *de novo* on April 27, 1983. The trial court rendered judgment on June 13, 1983 for appellee in the amount of $10,000 plus prejudgment interest, and appellants timely appealed.

## I

Appellants' first assignment of error is that:

"The trial court erred as a matter of law in forcing [*sic*] the alleged oral agreement between the parties representing the status of the real property being transferred."

Appellants argue that the Statute of Frauds prohibits appellee's cause of action.

Appellants' reliance upon the Statute of Frauds in this case is misplaced. Appellee did not bring an action to enforce an oral agreement regarding real property. Appellee brought an action in fraud seeking damages for an alleged misrepresentation with regard to the transfer of real property pursuant to a written agreement and two quit-claim deeds. The trial court did not order or enforce the transfer of real property pursuant to an oral agreement, but instead awarded damages for fraud. Appellants' first assignment of error is overruled.

## II

Appellants' second assignment of error is that:

"The trial court erred as a matter of law in admitting testimony regarding the oral contract between the parties."

Appellants argue that the introduction of testimony regarding the alleged misrepresentation violates the parol evidence rule.

Generally, the parol evidence rule prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements. *Charles A. Burton, Inc.* v. *Durkee* (1952), 158 Ohio St. 313 [49 O.O. 174]. However, a major exception to the general rule permits the introduction of contemporaneous oral representations when fraud is alleged. *Walters* v. *First Natl. Bank of Newark* (1982), 69 Ohio St. 2d 677, 681 [23 O.O.3d 547]; *Drew* v. *Christopher Constr. Co.* (1942), 140 Ohio St. 1 [23 O.O. 185], at paragraph two of the syllabus; *Niehaus* v. *Haven Park West, Inc.* (1981), 2 Ohio App. 3d 24, 25; Calamari & Perillo, The Law of Contracts (1977) 111-113. The case of *Newman* v. *Newman* (1921), 103 Ohio St. 230, cited by appellants, is not a case involving fraud. Since testimony is admissible to show fraud despite written agreements, appellants' second assignment of error is overruled.

## III

Appellants' third assignment of error is that:

"The trial court erred as a matter of law in finding fraud in the settlement agreement entered into between the parties."

Appellants argue that appellee had

no right to rely on appellant Epstein's alleged oral misrepresentation.[1] For the following reasons, this assignment of error is sustained.

As a general rule, a deed may be set aside for fraud just as a contract may be rescinded on grounds of fraud. The following elements must be established to prove fraud: (1) a material false representation or a concealment; (2) knowingly made or concealed; (3) with the intent of misleading another into relying upon it; (4) reliance, with a right to do so, upon the representation or concealment by the party claiming injury; and (5) injury resulting from the reliance. See *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1, 6 [57 O.O. 57]; *Hooper* v. *Seventh Urban, Inc.* (1980), 70 Ohio App. 2d 101, 107 [24 O.O.3d 126]; *Friedland* v. *Lipman* (1980), 68 Ohio App. 2d 255 [22 O.O.3d 422], at paragraph one of the syllabus; *Schwartz* v. *Capital Savings & Loan Co.* (1978), 56 Ohio App. 2d 83, 86 [10 O.O.3d 117]; *Klott* v. *Associates Real Estate* (1974), 41 Ohio App. 2d 118, 120-121 [70 O.O.2d 129].

The fourth element of fraud is the right to rely or justifiable reliance. In determining whether reliance is justifiable, " '* * * courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge.' " *Feliciano* v. *Moore* (1979), 64 Ohio App. 2d 236, 241 [18 O.O.3d 176] (quoting 37 American Jurisprudence 2d [1968] 330, 332, Fraud and Deceit, Section 248). In property transactions, there is no right to rely on oral representations regarding the property transferred where the true facts are equally open to both parties. *Traverse* v. *Long* (1956), 165 Ohio St. 249, 252 [59 O.O. 325]; *Klott* v. *Associates Real Estate, supra; Ralston* v. *Grinder* (1966), 8 Ohio App. 2d 208 [37 O.O.2d 213]. However, when there are latent defects or dangerous conditions not easily discoverable, coupled with misrepresentations or concealment, the doctrine of *caveat emptor* will not preclude recovery for fraud. *Miles* v. *Perpetual S. & L. Co.* (1979), 58 Ohio St. 2d 97, 101 [12 O.O.3d 108]. Also, when a fiduciary relationship exists, as between a realty agent and a client, the clients are entitled to rely upon the representations of the realty agent. *Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164; cf. *Walters* v. *First Natl. Bank of Newark, supra* (69 Ohio St. 2d 677 [23 O.O.3d 547]) (fiduciary relationship between bank and customer with regard to loan processing and credit life insurance). Otherwise, " '* * * Ohio * * * law requires a person to exercise proper vigilance in his dealings, so that where one is put on notice as to any doubt to the truth of the representation, the person is under a duty to reasonably investigate before reliance thereon. * * *' " *Foust* v. *Valleybrook Realty Co., supra,* at 165.

Further, a quit-claim deed transfers only those rights which a grantor has at the time of the conveyance. *Jonke* v. *Rubin* (1959), 170 Ohio St. 41 [9 O.O.2d 387], at paragraph one of the syllabus. These rights include both adverse and beneficial equities existing at the time of conveyance. *Maher* v. *Cleveland Union Stockyards Co.* (1936), 55 Ohio App. 412 [9 O.O. 112], at paragraph five of the syllabus. A quit-claim deed does not warrant that the grantor has a free and clear or good title. See R.C. 5302.11. In fact, a conveyance by quit-claim deed puts the grantee on notice that there

---

[1] Although the trial court's journal entry contained detailed findings with regard to the elements of fraud, it did not contain any finding of the justifiable reliance element.

may be defects in the title. *Cook* v. *Dinsmore* (1891), 5 Ohio C.C. 385, 393-394; cf. *Dietsch* v. *Long* (1942), 72 Ohio App. 349, 366-369 [27 O.O. 294] (transfer by quit-claim deed does not put a grantee on notice of equities existing that are not of public record). As a result, even oral expressions by a grantor as to the title conveyed when property is transferred by means of a quit-claim deed have been held to be mere opinions and are not expressions for which a grantor may be legally bound. *Schmidt* v. *Gore* (App. 1947), 49 Ohio Law Abs. 607, 608.

In this case, appellants transferred property to appellee in satisfaction of a debt owing to appellee. Appellee was fifty-five years old and had been in business for over twenty years. Appellee owned property and had been involved in property deals previously. Appellee knew there was a difference between a quit-claim deed and a warranty deed. Appellee was represented by counsel. At the direction of appellee, appellee's attorney prepared quit-claim deeds for the conveyance. Appellee presented the quit-claim deeds to appellant Melvin Epstein for his signature. Appellants did not prepare quit-claim deeds instead of warranty deeds to present to appellee and then try to induce or trick appellee into signing a document with fewer legal rights by oral misrepresentations. It was appellee, through his attorney, who prepared a quit-claim deed instead of a warranty deed. On these facts, there can be no claim of fraud in the inducement or in the execution of these instruments.

Further, all of the outstanding adverse equities affecting title to appellants' property were of public record. Appellee testified that he knew he could have checked the records, but he chose not to do a title search. Since all of the adversities regarding title to the properties were of public record and therefore easily discoverable, appellee had no right to rely upon any alleged oral misrepresentations.

Moreover, and most significantly, a quit-claim deed, in and of itself, in Ohio is notice that there may be title imperfections. *Cook* v. *Dinsmore, supra.* Therefore, even if appellant Melvin Epstein orally warranted good title, the fact that appellee drafted up, presented and accepted quit-claim deeds precludes an action for alleged fraudulent representations as to the quality of title. The trial court erred as a matter of law in holding otherwise. Accordingly, the judgment of the trial court is reversed, and judgment is hereby entered in favor of appellants.

*Judgment reversed and cause remanded.*

CORRIGAN, P.J., and ANN McMANAMON, J., concur.