## Sekston v. Partyka
### [Cite as 4 AOA 283]

Case No. 56952
Cuyahoga County, (8th)
Decided June 21, 1990

David B. Hochman, 5885 Landerbrook Road, Mayfield Heights, Ohio 44124, for Plaintiff-Appellants.

Leo C. DiEgidio, Box One, The Pavilion, 9735 Valley View Road, Macedonia, Ohio 44056, for Defendant-Appellees.

KRUPANSKY, P.J.

Plaintiff-appellants Nancy Sekston, Trustee, et al. filed a complaint on June 30, 1987 in the Cuyahoga County Court of Common Pleas case number 131974 alleging defendant-appellees Chester Partyka, a licensed realtor, et al. defrauded them in concealing an $81,000 purchase offer in order to advantageously purchase the property for Partyka's daughter Deborah at $70,000, substantially below the concealed offer.

On August 22, 1988 an arbitration panel found for plaintiffs from which defendants appealed demanding a trial de novo August 26, 1988. The trial court jury verdict in favor of the defendants was journalized October 19, 1988.

Plaintiffs' motion for judgment notwithstanding the verdict and in the alternative motion for new trial was denied November 15, 1988. Plaintiffs filed a notice of appeal December 23, 1988, which was not timely pursuant to App. R. 4(A).[1] Plaintiffs filed a motion for reconsideration, claiming the time for appeal from the Civ. R. 50(B) and Civ. R. 59 motions had expired before plaintiffs were notified of the trial court decision. Upon reconsideration this court granted plaintiffs' motion based upon Atkinson v. Grumman (1988), 37 Ohio St. 3d 80.

The facts adduced at trial are as follows:

On March 1, 1987, defendant Chester Partyka, a licensed real estate broker doing business as Partyka Realty, entered into an exclusive listing agreement with Nancy Sekston, Trustee, to sell the property located at 6024 East Pleasant Valley Road, Cuyahoga County.

Edith Martin, a widow who was the original owner of the East Pleasant Valley property, desired to execute a trust of her residence in favor of Nancy Sekston's two minor children to whom Edith Martin's deceased husband was related. In order to activate this trust, Mrs. Martin was obliged to revoke a previous trust of her residence deeded in favor of Stephen Leiby.[2] Leiby accommodated Mrs. Martin and executed a quit-claim deed to Mrs. Martin February 6, 1987. Mrs. Martin in turn executed a quit-claim deed to Nancy Sekston, Trustee, February 25, 1987 in order to fund the irrevocable trust for Sekston's two minor sons.[3]

Mr. Csizak, the plaintiffs' first witness, a real estate agent then employed by Century 21 Kriss and Associates, testified he showed the property on East Pleasant Valley to Donald and Linda Schilling on three separate occasions culminating in a written offer on the property of $81,000 on March 11, 1987.[4] Mr. Csizak testified he contacted Partyka on March 12, 1987 and was told the seller did not have good title. Csizak testified he, as selling agent, called repeatedly over a period of many weeks and was never able to present his offer to Sekston. Csizak testified he ordered a legal description of the property on March 13, and it showed a male name on the title.[5]

Subsequently, on April 29, 1987 Mr. Csizak discovered the East Pleasant Valley Road residence had been sold on April 18, 1987 for $70,000 to "Ted Penkowski or nominee." The nominee eventually became known as Chester Partyka's daughter Deborah.

Partyka testified Penkowski a.k.a. Panek, the originally named buyer, first requested an extension of time in which to purchase and then had backed out of the sale entirely. Sekston testified she was anxious to sell because she had purchased another home in Lake County and needed the proceeds to finance the Lake County home. Partyka, in a written letter April 21, 1987 to Sekston's escrow agent, Conway Title Company, personally guaranteed the $70,000 for deliv-

ery May 20, 1987. The jury found for defendants on all causes of action.

Plaintiff-appellants' sole assignment of error follows:

"THE PLAINTIFFS-APPELLANTS, FOR THEIR ASSIGNMENT OF ERRORS, SAY THAT THE JUDGMENT RENDERED BY THE COURT OF COMMON PLEAS FOR CUYAHOGA COUNTY IN THIS CASE IS ERRONEOUS IN THE FOLLOWING RESPECTS:

"A. THE JUDGMENT IS NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"B. THE JUDGMENT IS CONTRARY TO LAW.

"C. THE TRIAL COURT ERRED IN OVER-RULING THE PLAINTIFFS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND IN THE ALTERNATIVE FOR NEW TRIAL."

Plaintiff-appellants' sole assignment or error lacks merit.

Appellants' assignment of error stems from the same issue requiring review of the entire record. Appellants argue the trial court erred in failing to grant a Civ. R. 50(B) motion for judgment notwithstanding the verdict or in the alternative a new trial, Civ. R. 59, for the following reasons: *viz.,*

"(1) defendant Mr. Partyka was a real estate broker who owed a fiduciary duty to plaintiff-seller Sekston

"(2) Partyka breached his fiduciary duty by fraudulently failing to disclose a purchase offer of $81,000 to plaintiff Sekston

"(3) Partyka additionally failed to disclosed to seller Sekston that his daughter, Deborah Partyka, was the buyer

"(4) this failure to disclose to the seller culminated in the sale of the property for $70,000, thus injuring:

"(a) the seller Sekston who relied on broker Partyka losing $11,000

"(b) appellants Century 21 Kriss Associates and George Csizak who lost one-half of a commission, and

"(c) appellants Donald and Linda Schilling as potential buyers who made a written offer and lost the opportunity to purchase Sekston's property."

Appellants' argument predicated on the theory the jury verdict was against the manifest weight of the evidence is unpersuasive.

The domain of the jury is to weigh the evidence and assess the credibility of witnesses. *Hollenbeck* v. *McMahon* (1875), 28 Ohio St. 1, at 9. The trial court's denial of the judgment notwithstanding the verdict[6] or in the alternative for a new trial[7] was within the sound discretion of the trial court. *Highfield* v. *Christian Academy* (1987), 34 Ohio App. 3d 311, 315.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Feldman* v. *Loeb* (1987), 37 Ohio App. 3d 188, 190 citing *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, syllabus; *Chicago Ornamental Iron Co.* v. *Rook* (1915), 93 Ohio St. 152, 160.

In ruling on a Civ. R. 50(B) motion for judgment notwithstanding the verdict, the evidence presented at trial is construed most strongly in favor of the party opposing the motion and "where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied." *Osler* v. *Lorain* (1986), 28 Ohio St. 3d 345, quoting *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275. When considering a motion for judgment notwithstanding the verdict, the court must neither weigh the evidence nor the credibility of witnesses. *Id.*

In the motion for new trial, appellants attack the manifest weight of the evidence. In ruling on the new trial motion pursuant to Civ. R. 59(A) (6), the trial court *must* review the evidence at trail and pass on the credibility of the witnesses. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, syllabus, paragraph 3.

The review of the trial court is not unlimited, however, the trial court is given wide latitude to review the weight of the evidence and credibility of the witnesses to find only "whether it appears to the trial court that manifest injustice has been done." *Id. Osler, supra* at 351.

Seller Sekston-Trustee as principal in the case *sub judice* argues Partyka, as her agent, defrauded her by failing to disclose an outstanding offer from Century 21 Kriss Associates on behalf of the Schillings for $81,000, causing Sekston to sell for $70,000 thus incurring a loss when Partyka sold Sekston-Trustee's residence to his own daughter Deborah Partyka.

To prevail on the claim of fraud, Sekston, et al. must prove the elements of fraud as follows:

"(1) A material false representation or a concealment;

"(2) knowingly made or concealed;

"(3) with the intent of misleading another into relying upon it;

"(4) reliance, with a right to do so upon the representation or concealment by the party claiming injury; and

"(5) injury resulting from the reliance." *Finomore* v. *Epstein* (1984), 18 Ohio App. 3d 88, 90 (citations omitted); see also *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69.

It is axiomatic that when a seller hires a real estate broker as agent, a fiduciary relationship exists. *Finomore, supra; Foust* v. *Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164; cf. *Walters* v. *First Natl. Bank of Newark* (1982), 69 Ohio St. 2d 677. The client is therefore, entitled to rely upon the broker's representations. *Id.* A standard of good faith and fair dealing exists both toward the buyer and the principal. *Quinn* v. *Bd. of Real estate Examiners* (1956), 104 Ohio App. 316.

George Csizak, agent for buyers Linda and Donald Schilling, testified that on March 11, 1987 he accepted a written offer of $81,000 from the Schillings in his capacity as a realtor for Century 21 Kriss Associates after having thrice shown the Schillings the house of Edith Martin/Nancy Sekston-trustee.

Csizak testified that on March 12, 1987 he called Partyka who stated the original owner Edith Martin did not have clear title because Mrs. Martin's home was not in her name at that time. Csizak stated that for his own peace of mind he ordered a title company to verify whether Mrs. Martin's name was or was not on the title. Csizak's testimony on direct examination follows:

"Q. Did there come a time when you checked the title to the property to determine if Edith did in fact own the property?

"A. Yes. After Mr. Partyka explained the situation, just for my own peace of mind I ordered up a legal, a title company to find out if what he said was true, and that her name was not on the title."

When I received the information from the title company, it did show that title company, it did show that it was in a male's name.
Csizak added he received this information about March 13, 1987.

Csizak further testified he continued to call repeatedly and in seven weeks was unable to present the offer to Partyka or his principal, Mrs. Sekston, trustee. Appellants argue Partyka had a duty to disclose the Schilling offer and the failure to disclose such offer to Sekston constituted a breach of fiduciary duty. Appellants argue further the non-disclosure that the first name buyer Mr. Penkowski, a.k.a. Panek, was a friend of Partyka's combined with Penkowski's "dropping out" of the transaction and subsequent sale of the house to Partyka's daughter Deborah was all factually relevant to prove the elements of "knowing concealment with the intent of misleading" another. *Finomore, supra.*

Reviewing the entire record in the case *sub judice* details conflicting and convoluted testimony between the two main witnesses Csizak and Partyka. Chester Partyka vehemently denied ever talking to Csizak regarding an offer on the East Pleasant Valley property of Martin/Sekston. In fact, Partyka testified he never heard of Csizak until the suit *sub judice* was filed.

Plaintiff's Exhibit 13 reveals the quit-claim deed from Edith Martin to Nancy Sekston was filed in the recorder's office March 10, 1987, thus, the deed was clearly in a woman's name at this juncture. Csizak admitted on cross-examination that "Edith" and "Nancy" are women's names. If Csizak had ordered a title search as he maintains, the search would have revealed a woman, Nancy Sekston/trustee, was the record owner of the Pleasant Valley Property on March 13, 1987. The title search Csizak allegedly ordered was furthermore, never produced or introduced as an exhibit at trial. Csizak has no one to corroborate he indeed ever delivered the Schilling offer of $81,000 to Partyka.

The manager of Csizak's realty office, Michael Kowalski, testified it was office policy to keep him informed on outstanding offers but he did not know of the Schilling offer. Furthermore, real estate experts Gentile, Baker and Krynovich provided by both defendants and plaintiff testified the custom and practice in the industry would be to present an offer expeditiously, either sending a certified letter to the agent or if receiving no response, approaching the seller themselves with the offer in one to seven days. Guy Gentile, one of the real estate expert witnesses testified if he thought an agent was stalling, he would contact the seller personally within twenty-four to forty eight hours.

Mrs. Sekston's own testimony on direct examination indicated she was in a rush to sell the East Pleasant Valley property. Nancy

Sekston testified on direct examination as follows:

"Q. During this time you were bugging him continuously to make sure that the deals could get completed so you could but the house in Perry and complete your trust and do all the things you were supposed to do?

"A. That is right. Every time my aunt had a question or I did we called him only because we didn't know what else to do, but to call him.

"Q. You were probably becoming a pain in the neck, so to speak?

"A. You could probably say so. My other real estate lady felt the same way. I was bugging her on how the deal was going on the other end every day."

In addition, Mrs. Sekston testified on direct examination as follows:

"Q. Prior to May 17th had Mr. Partyka kept you informed of the progress of Mr. Penkowski's purchase of the house?

"A. Yes. The day after I met with Mr. Panek I got a call at work from Chester.

"He said, 'I don't know what I'm going to do. I'm losing money on this deal I think my buyer has fallen through and I'm going to get stuck with your house and I'm going to have to sell my other house and move back next door and give this house to Debbie.'" * * * (Tr. 181, 182.)

The above testimony could indicate Partyka was simply attempting to accommodate Sekston by producing a buyer at the $70,000 price agreed upon with Penkowski.

Exhibits produced a trial by defendants indicated Partyka placed ads in the Plain Dealer advertising open houses all of March, 1987 and made and kept at least three appointments with clients and several co-brokers to show the East Pleasant Valley property. The jury could conclude paying for ads and showing the house to others was not compatible with and intent to defraud Sekston.

Partyka secured a buyer, i.e., Panek, a.k.a. Penkowski, who was a real estate agent who purchase for investment purposes. Partyka disclosed this fact to Mrs. Sekston.[8]

On April 21, 1987, pressured by the seller Sekston who had purchased property in Painesville, Partyka *personally* guaranteed the sale, in writing, to the escrow officer at Conway Title on behalf of Mrs. Sekston. Moreover, had Partyka sold the Sekston property for $81,000 instead of $70,000, his commission would have been substantially greater.[9]

The record at trial reveals the combined testimony fails to rise to a level needed to prove Partyka "knowingly" made or "concealed" the $81,000 offer of Csizak with the"intent" of misleading Sekston into relying upon Partyka's concealment of a better offer so Deborah Partyka could buy the East Pleasant Valley property for less money. The jury could therefore, conclude the first three elements of fraud were not met viz, (1) no material false representation or concealment; (2) knowingly made or concealed; (3) with the intent of misleading another into relying upon it.

The last two elements of fraud, "justifiable reliance" and "injury" proximately resulting also appear negated. Sekston voluntarily took the $70,000 deal since she was in a hurry to close. Nowhere does she testify it was Partyka's pressuring or advice that it was the "best" she could do, although Partyka did say the sellers would not get the asking price of $89,900.

Taken as a whole, construing the evidence most favorably for the appellees as required pursuant to Civ. R. 50, the trial court did not abuse its discretion in overruling the appellant's motion for judgment notwithstanding the verdict. The test to be applied by the trial court in a ruling for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict and is as follows:

"* * * The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. * * *" *Osler* v. *Lorain, supra* at 347.

Further, the new trial motion was properly denied by the trial court.

"Where the evidence is susceptible to more than one construction, a reviewing court is bound to give the evidence the interpretation most consistent with the verdict and judgment." *Seasons Coal Co.* v. *Cleveland* (1984), 10 Ohio St. 3d 77, 80. A motion for new trial will not be granted where the verdict is supported by some competent, substantial or credible evidence. *Verbon* v. *Pennese* (1982, 7 Ohio App. 3d 182.

Partyka's testimony is not so incredible that it renders the verdict a "manifest injustice." Civ. R. 59; *Rohde, supra.*

The jury could reasonably conclude defendant did not knowingly intentionally mislead

appellants by concealment thereby defrauding appellants.

Accordingly, appellants' assignment of error is not well taken and overruled.

*Judgment affirmed.*

MATIA, J., and HOFSTETTER, J., concur.

Judge Edwin T. Hofstetter, Retired, Eleventh Appellate District, sitting by assignment.

---

[1] App. R. 4(A) provides in pertinent part:
"* * *
"The running of the time for filing a notice of appeal is suspended as to all parties by a timely motion filed in the trial court by any party pursuant to the Civil Rules hereafter enumerated in this sentence, and the full time for appeal fixed by this subdivision commences to run and is to be computed from the entry of the last of any of the following orders made upon a timely motion under such rules granting or denying a motion:
'(1) for judgment under Civ.R. 50(B);
'(2) for a new trial under Civ.R. 59;
'(3) for vacating or modifying a judgment by objections to a referee's report under Civ.R. 53(E) (7) or Juv.R. 40(D) (7);
'(4) for findings of fact and conclusions of law under Civ.R. 52. A judgment or order is entered within the meaning of this subdivision when it is entered in compliance with Civ.R. 58.'"

[2] Mrs. Martin had deeded her home to Stephen Leiby, attorney trustee for the Cathedral of Tomorrow, 111 Stow Avenue, Cuyahoga Falls, Ohio on September 25, 1986.

[3] The trust document was entered as plaintiffs' Exhibit 1 and details the commitment Ms. Martin felt to help educate the two boys who were related to her late husband through their father, Allen Nimmo, Mrs. Sekston's husband by a prior marriage. Mrs. Sekston was to provide a home for Ms. Martin and purchase a home for all of them with the proceeds of the sale of the East Pleasant Valley residence.

[4] Plaintiffs' Exhibit 5 signed by the parties and dated March 11, 1987 with $1,000 earnest money note.

[5] The deed Stephen Leiby to Edith Martin was dated February 6, 1987, no date of filing was noted on the Leiby/Martin deed, Plaintiff's Exhibit 16 (Defendant's Exhibit E). Sekston thereafter had a quit-claim deed executed to her named as trustee which was filed in the recorder's office March 10, 1987 designated Plaintiff's Exhibit 13.

[6] Civ. R. 50(B) states in part:
"(B) Motion for judgment notwithstanding the verdict. Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or new trial may be prayed for in the alternative. * * *"

[7] Civ. R. 59 states in part:
"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds.
"* * *
"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
"(7) The judgment is contrary to law.

[8] The offer and seller's acceptance signed by Ted Penkowski and Mrs. Sekston on April 18, 1987 at 10:18 a.m. acknowledges in writing the buyer is a real estate agent.

[9] Testimony indicated the going rate of commission on real estate sales was 7% at this time. Elementary calculations indicate on a sale of $11,000 more the commission would be $770.