JOURNAL ENTRY and OPINION
In this action resulting from the sale of their residence, defendants/third-party plaintiffs-appellants Joseph D. and Shirley Fleck appeal from the trial court's entry of judgment in favor of plaintiffs-appellees Howard and Michelle Shear on their complaint and in favor of third-party defendant-appellee Wholesale Water-proofers, Inc. (Waterproofers) on appellants' third-party complaint.
Appellants assert the trial court erred in failing to grant directed verdicts for them in this action. Appellants contend the Shears failed at trial to produce the evidence necessary to prevail on their claim of fraudulent misrepresentation, the Shears are precluded from recovery on their claim pursuant to the doctrine of caveat emptor, and the evidence established the validity of their claim of breach of warranty against Waterproofers.
After a review of the record and the evidence presented, this court disagrees with appellants. Therefore, the trial court's order is affirmed.
The record reflects in 1987 appellants purchased a new home located at 34531 Summerset Drive in Solon, Ohio. Shortly after the purchase, appellants began experiencing problems with water in the basement. At the point at which standing water reached a depth of one to two inches, appellants contacted the builder. The builder responded by doing some trenching work outside of the house. The work was performed along the basement west wall.
Approximately six months later, however, appellants again contacted their builder regrading water along the west wall of the basement.[1]
The builder, at that time, excavated around the home's west and north walls. The record fails to indicate whether any further work was performed thereafter on the home's exterior. The record clearly reflects that during appellants' ownership of the home, appellant Joseph Fleck personally installed paneling and carpeting in the basement.
In April 1997, appellant Joseph Fleck noticed some discoloration of the basement paneling's bottom, or base, molding. He assumed * * * [it] was caused by some dampness or seepage. He again contacted the builder.[2]
After an inspection, the builder sent a written response to appellants suggesting two recommendations: (1) to raise the grade and compact the soil around the entire exterior of the home; and (2) to check the home's spouting to ensure it was free of debris and working properly.
In July 1997, appellants contacted the City of Solon's Pollution Control Department regarding a problem with water in the basement. The city responded by sending sewer maintenance workers to determine the functionality of the home's connections to the city's storm sewers. Appellants were advised that the connections were functioning properly.
Appellants also sought other opinions in handling this problem. One of appellants' acquaintances was an excavator ; he offered, at a cost of $6,000, to investigate the home's foundation to determine a cause for the water incursion. As the offer did not encompass the cost of the remedy, should one be necessary, appellants declined.
Appellants, at this time, began advertising their home as for sale by owner. In late July or early August 1997, Stuart Jones noticed their yard sign as he passed by en route to view another house. Jones contacted appellants and arranged to view their home later that day.
Appellants escorted Jones through their home. When they approached the basement, Jones noticed [a]s soon as [Joseph Fleck] opened the door to go down there was a strong odor of dampness. Jones descended to find one [basement] wall was moist and the carpeting was soaking wet. When he questioned appellant concerning his observations, appellant said that a spigot that did (sic) the lawn broke off and it was leaking in the house. Appellant further stated it had never happened before.
Although unconvinced, Jones telephoned appellant Joseph Fleck a few days later and suggested that if appellants would negotiate the price they were asking for their home, Jones would agree to assume the cost of repairing the basement's problem. Appellants declined, informing Jones they were taking [their home] off the market until they fixed it.
On August 8, 1997 appellants hired Waterproofers, at a cost of $3,500, to perform work in the basement of the home. Waterproofers installed new drain tile along the floor along the basement's interior walls and also installed a sump pump. The pump's discharge line was attached to one of the home's downspouts; thus, if water were to form on the basement floor, it would be pumped into the home's drainage system, to flow, eventually, into the city sewer lines.
Waterproofers' work did not require any exterior excavation of the home's foundation. Moreover, in relevant part, appellants' contract with Waterproofers contained the following provisions:
 [Appellants] have been told and understand that due to the nature of water seepage problems, the services provided by this agreement will not make the basement area serviced impermeable to water seepage problems. Additional service may be required should subsequent seepage occur on serviced areas only.
* * *
 Warranty for the lifetime of the structure on serviced area only * * * See Certificate of Warranty.
(Emphasis added.)
The Certificate of Warranty provided to appellants by Waterproofers stated:
 Installing contractor warrants affected area to be free from water for the lifetime of the structure transferable to any subsequent owners (see back of original contract for transfer directions). If such need should arise, any leaks in the affected area shall be repaired at no cost to the homeowner. This warranty does not cover backing up of drains or sewers, flooding, broken water pipes, condensation caused by high humidity or damp spot discoloration of walls or floors. * * *
(Emphasis added.)
After Waterproofers had concluded its work, appellant Joseph Fleck removed the base molding of the basement's paneling. Finding it rotted, he replaced it. Shortly thereafter, appellees Shears responded to a newspaper advertisement placed by appellants for the sale of their home. The Shears walked through appellants' house and liked what they observed; however, when they informed appellants they had not yet sold their own home, appellants discouraged their interest.
By early October 1997, the Shears had sold their home. Upon making inquiry, they discovered appellants' home now was listed with a real estate broker. The Shears returned to view appellants' property. In the basement, the Shears observed an area that was paneled, carpeted and sparsely furnished. Appellant Joseph Fleck volunteered that the house at one time had seepage in the basement but guaranteed ** that it was taken care of.
The subject again was raised on the occasion of the Shears' second visit to appellants' property when appellants provided the Shears with the Residential Property Disclosure Form mandated by R.C. 5302.30. In the section of the form that required appellants to state whether they kn[e]w of any current water leakage, water accumulation, extreme dampness or other defects with the basement, appellants checked the Yes box, describ[ing] their response as follows:
Water seepage noticed in spring of (1997).
 Problem corrected by Waterproofing Co. of Auburn with a lifetime warranty passes on to new owners (sic).
The next paragraph of the form required appellants to state whether they kn[e]w of any repairs * * * to the property or other attempts to control any water or dampness problems in the basement * * * since owning the property (but not longer than the past 5 years). (Emphasis added.) Appellants responded, Same as above.
Appellants' responses in the form caused the Shears to question them about the basement. Appellant Joseph Fleck reassured the Shears that appellants
 * * * had a one-time water seepage problem and that they had hired a contractor prior to [the Shears] wanting to purchase the house. That it was absolutely taken care of and we have a guaranteed repair against * * * any type of leakage.
The Shears further were informed the basement was protected by an interior drain against all water problems by a [l]ifetime warranty in writing. Appellants did not inform the Shears of the recent replacement of the paneling's base molding. Appellants' copy of the actual warranty provided by Waterproofing, moreover, was not furnished to the Shears until after they already had purchased the home.
On October 30, 1997 the Shears signed an agreement to purchase appellants' home for $252,000. The Shears declined to hire a home inspector prior to completing the purchase. They moved into the home shortly before Christmas, and the basement became a play area for their two young children.
In March 1998, the Shears noticed dampness and moisture on the [basement] floor. The carpeting was wet in the corners of the west wall. Within a short time, the wall's paneling actually started to buckle away from it. Both the carpeting and paneling began to have a moisture odor. The basement water problem was constant throughout the thaw.
Since appellants, by this time, had transferred the warranty given to them by Waterproofers to the Shears, the Shears contacted Waterproofers. Waterproofers' president, Stuart Lowe, agreed to pay a visit to the home to take a look at the problem. Upon his inspection, Lowe couldn't figure out what was wrong. He did, however, observe that the paneling, which Howard Shear partially had removed from the basement wall, was pretty well rotted and moldy.
In order to maintain customer satisfaction, Lowe decided to take the whole [waterproofing] system out and redo it just to make sure it was right. Waterproofers performed the work pursuant to the warranty; however, the effort proved fruitless. Lowe therefore decided to do some exterior excavation to take a look at the [home's] discharge lines and downspouts.
The result of this investigation surprised Lowe. In excavating near the downspout to which the new sump pump had been connected, he could see the original construction had been altered:
 [n]ewer PVC pipe had been installed to replace crock pipe, some plastic had been applied to the basement corner in an attempt to create a vapor barrier [against] water, and [t]he line * * * was actually running backwards, i.e., the water pipe was pitched to angle water toward, rather than away from, the house.
Lowe explained to the Shears that the water excavated by the sump pump simply was flowing back down that pipe to return to the basement. Lowe further explained that Waterproofers' warranty did not apply to what he was seeing since the water in the basement was due not to any faulty work Waterproofers had done but rather to backing up of drains and defective exterior water pipes.
On August 6, 1998 the Shears filed the instant action against appellants. The Shears alleged appellants had failed to disclose the defect in the basement, setting forth claims of fraud, breach of contract, breach of warranty, and negligent infliction of emotional distress.
The filing of the instant action led the Shears to seek the services of construction engineer Richard McKeon. In September 1998, McKeon performed an inspection of the home. Upon a partial exterior excavation of the home's foundation, he discovered the following: (1) horizontal cracking in the concrete block of the [west] wall of the basement; (2) non-standard vertical plastic perforated piping rising from below grade ; and (3) near the base of the foundation, well below grade, non-standard horizontal plastic perforated piping connected to the downspout, with perforations facing upward rather than downward. Based upon his inspection, McKeon opined that the home had a continual problem with water entering the basement. He further opined that unorthodox repairs had been attempted that predated the Shears' ownership of the home.
Although appellants filed an answer denying the relevant allegations contained in the Shears' complaint, appellants thereafter failed to appear for two scheduled case management conferences. The trial court's subsequent entry of a default judgment for the Shears ultimately was reversed by this court in Shear v. Fleck (July 22, 1999), Cuyahoga App. No. 75928, unreported.
On remand, appellants sought leave from the trial court to file an answer amended to contain a third-party complaint against Waterproofers. The trial court granted appellants' request; appellants presented claims for breach of contract, breach of warranty and contribution.
During the pendency of the case, the Shears contracted to have the home's exterior basement waterproofed. The total cost to replace the home's entire drainage system, repair the basement wall, install new paneling and carpeting, and replant the landscaping came to $12,400.
The case eventually proceeded to a bench trial. Following the presentation of the evidence, the trial court denied appellants' motions for directed verdicts on the Shears' claims and on their claims against Waterproofers. The trial court, instead, eventually rendered judgment for the Shears on their complaint in the amount of $12,400 against appellants and rendered judgment for Waterproofers on appellants' third-party complaint.
Appellants have filed a timely appeal from the trial court's order of judgment. They present three assignments of error for review.
Appellants' first two assignments of error are addressed together as follows:
 I. THE TRIAL COURT'S DECISION TO DENY THE MOTIONS FOR A DIRECTED VERDICT MADE BY THE DEFENDANTS/THIRD-PARTY PLAINTIFFS-APPELLANTS CONSTITUTES REVERSIBLE ERROR.
 II. THE TRIAL COURT'S DECISION TO AWARD THE PLAINTIFFS-APPELLEES A JUDGMENT IN THE AMOUNT OF $12,400 AGAINST THE DEFENDANTS/THIRD-PARTY PLAINTIFFS-APPELLANTS CONSTITUTES REVERSIBLE ERROR.
In these assignments of error, appellants argue that a directed verdict in their favor on the Shears' complaint was warranted. Appellants contend that the evidence demonstrated the Shears had notice of a potential defect in the basement and therefore are barred from recovery pursuant to the doctrine of caveat emptor. This court is unpersuaded.
A trial court must grant a Civ.R. 50(A)(4) motion for directed verdict when, after construing the evidence most strongly in favor of the party opposing the motion, it finds reasonable minds could come to only one conclusion and that conclusion is adverse to such party. The test requires the trial court to determine whether there is any evidence of substantial, probative value in support of the non-movant's claim; thus, the legal sufficiency of the evidence, rather than its weight, is examined. Eldridge v. Firestone Tire Rubber Co. (1985),24 Ohio App.3d 94, citing Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66.
The claims asserted against appellants by the Shears essentially were based upon a cause of action for fraud.
 An action in common-law civil fraud has five essential elements: (1) a material false representation or a concealment (2) knowingly made or concealed (3) with the intent of misleading another into relying upon it, (4) reliance, with a right to rely, upon the representation or concealment by the party claiming injury, and (5) injury resulting from the reliance. Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 711-712; Finomore v. Epstein (1984), 18 Ohio App.3d 88, 90, 18 OBR 403, 405-406, 481 N.E.2d 1193, 1195-1196; Schwartz v. Capital S. 
L. Co. (1978), 56 Ohio App.2d 83, 86, 10 O.O.3d 117, 118-119, 381 N.E.2d 957, 959.
 The doctrine of caveat emptor continues to apply, as the Ohio Supreme Court noted in Layman v. Binns (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus:
 The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor.
If a purchase agreement states that the buyer purchases real property in its as is physical condition, as it does here, the vendor has no duty to disclose latent defects. Vecchio v. Kehn (Aug. 18, 1994), Cuyahoga App. No. 66067, unreported, at 8, 1994 WL 449703; Kossutich v. Krann (Aug. 16, 1990), Cuyahoga App. No. 57255, unreported, at 4-5, 1990 WL 118705; Kaye v. Buehrle (1983), 8 Ohio App.3d 381, 383, 8 OBR 495, 497,457 N.E.2d 373, 376. [However,] [a]n as is disclaimer clause in a real estate purchase agreement bars suit for passive nondisclosure, but does not protect a seller from action alleging positive misrepresentation or concealment. Vecchio; Kossutich, supra * * * Eiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446, at 457. (Emphasis added.)
In this case, the Shears presented evidence that demonstrated appellants engaged in fraudulent concealment of the water problems that existed in the basement of the home. Ward v. Kaminsky (Feb. 12, 1998), Cuyahoga App. No. 72128, unreported.
Appellants acknowledged in their testimony they had experienced basement water problems from the time they first had purchased the newly-constructed home in 1987. MacDonald v. Edwards (July 9, 1998), Cuyahoga App. Nos. 72698, 72768, unreported. The evidence demonstrated the problem remained unsolved as late as April 1997, when the City of Solon informed appellants city sewer lines were not a cause. Construing the evidence most strongly in the Shears' favor, appellants made the inquiry of the city at the time because the home's basement once again had flooded during the spring thaw.
Appellants admitted in their testimony they wanted to make sure before [they] sold the home that [they] covered all the bases ; however, they indicated they were unwilling to spend the money actually to find the source of the problem. They further admitted that they hired Waterproofers at a comparatively low cost to install only an interior system because of [the] warranty. It may be inferred from this they desired to shift responsibility for the problem to Waterproofers for as little cost and effort as possible.
The evidence also demonstrated appellants did not merely neglect to inform the Shears of this latent defect in the basement but, instead, actively concealed it. Shortly before showing the house to prospective purchasers, appellant Joseph Fleck personally replaced only the bottom molding of the basement's paneling. It certainly may be inferred from the evidence presented that in doing so, he could determine the paneling itself at that level showed signs of rot but that he caused the flaw to be masked. Powell v. Lulaks (May 11, 2000), Cuyahoga App. No. 75701, unreported; Hanson v. Rieser (Nov. 9, 1999), Franklin App. No. 98AP-1390, unreported; cf., Vecchio v. Kehn (Aug. 18, 1994), Cuyahoga App. No. 66067, unreported; Ross v. Trego (1996), 113 Ohio App.3d 637.
Appellants' disclosures about the basement similarly were active misrepresentations. Thoman v. Horvath (June 1, 2000), Cuyahoga App. No. 77157, unreported. They stated the problem was of a one-time nature. This statement was made to at least two different prospective purchasers, and the problem was attributed to two different sources. Moreover, contrary to the requirements of the R.C. 5302.30 disclosure form, appellants did not mention any further attempts to control any water or dampness problems for the previous five years. Schlect v. Helton (Jan. 16, 1997), Cuyahoga App. No. 70582, unreported;. cf., Liotta v. Eckley (Jan. 13, 2000), Cuyahoga App. No. 75127, unreported; Osinski v. Kornja (Feb. 19, 1998), Cuyahoga App. No. 72129, unreported.
The as is clause in a purchase agreement does not bar a purchaser's recovery if the seller engages in fraud of commission. Kaye v. Buehrle (1983), 8 Ohio App.3d 381, 383; Tipton v. Nuzum(1992), 84 Ohio App.3d 33,39. Since the evidence presented in this case, construed most strongly in the Shears' favor, was sufficient to present a factual question concerning appellants' active fraud with respect to the basement water problem, the trial court did not err in failing to direct a verdict in appellants' favor. Ward v. Kaminsky, supra; Powell v. Lulaks, supra; cf., Felker v. Schwenke (1998), 129 Ohio App.3d 427; Cardi v. Gump (1997),121 Ohio App.3d 16; Tipton v. Nuzum, supra; Riccardi v. Levine (May 11, 2000), Cuyahoga App. No. 76215, unreported.
Accordingly, appellants' first two assignments of error are overruled.
Appellants' third assignment of error states:
 THE TRIAL COURT'S DECISION TO RENDER JUDGMENT IN FAVOR OF THE THIRD-PARTY DEFENDANT-APPELLEE ON THE THIRD-PARTY COMPLAINT BROUGHT AGAINST IT BY THE DEFENDANTS/THIRD-PARTY PLAINTIFFS-APPELLANTS CONSTITUTES REVERSIBLE ERROR.
Appellants argue a directed verdict in favor of Waterproofers on their claims of breach of warranty, breach of contract and contribution was warranted in this case. Appellants, however, present no legal authority to support their position. Based upon appellants' failure to comply with App.R. 16(A)(7), this court declines to address appellants' argument. See Meerhoff v. Huntington Mtg. Co. (1995), 103 Ohio App.3d 164, 169; State v. Watson (1998), 126 Ohio App.3d 316, 321; State v. Wilson (Mar. 8, 2001), Cuyahoga App. No. 77758, unreported.
Appellants' third assignment of error also is overruled.
Judgment affirmed.
It is ordered that all appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, J. CONCURS TERRENCE O'DONNELL, J. CONCURS IN
[1] Quotes indicate testimony given by a witness at trial.
[2] By this time, a successor company had taken over the original builder's business.