DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Maumee Municipal Court in favor of defendant-appellee Janet Caskey in a forcible entry and detainer action filed by plaintiff-appellant David S. Kaiser. From that judgment, Kaiser raises the following assignments of error:
 "1. The evidence at trial was insufficient as a matter of law to show that there was a meeting of the minds between the parties sufficient to transfer a life estate interest to Appellee.
 "2. The Trial Court erred in finding that Appellee holds a life lease/life estate in the Fenwick [sic] property contrary to the Statute of Frauds.
 "3. The Trial Court erroneously considered Parol Evidence that contradicts unambiguous terms of a written document transferring title of the Fenwick [sic] property to Appellant.
 "4. The Trial Court erred when it found that Appellee was entitled to a life lease based on the doctrine of part performance.
 "5. The Trial Court erred when it found that there was a compelling case made for promissory estoppel."
On June 14, 2001, Kaiser filed an action in forcible entry and detainer seeking a writ of restitution of a residential premises described as 6818 Fenwyck, #27, Maumee, Ohio (the "Fenwyck property"). That property, a condominium, was occupied by Janet Caskey, Kaiser's former mother-in-law. The complaint alleged that Caskey was a month-to-month tenant, that Kaiser had served Caskey with a thirty-day notice to vacate and a three-day notice to vacate, and that Caskey had not vacated the premises, despite Kaiser's demands.
The case subsequently came before the court in a bench trial at which appellant, appellee, Linda Driftmyer, appellee's daughter, Ron Reon, appellee's brother-in-law, and Jane Haley, a real estate agent, testified. On November 16, 2001, the trial court filed a decision and judgment entry which adduced the following facts.
In 1993 Caskey was the owner of a home in Gibsonburg, Ohio (the "Gibsonburg property"), which had an outstanding mortgage of approximately $35,000. In May of that year, Caskey and Kaiser entered into an agreement under which Kaiser would pay off the outstanding mortgage on Caskey's home and Caskey would deed the home over to Kaiser, reserving a life estate in the home for herself. Under that agreement, Kaiser agreed to pay the real estate taxes on the home for the duration of Caskey's life estate and Caskey agreed to pay the maintenance on the home. Caskey's retention of the life estate in the Gibsonburg property was included on the deed from Caskey to Kaiser.
Thereafter, in 1995, after discussions with her two daughters, Joanne Kaiser and Linda Driftmyer, Caskey agreed that it would be best if she lived in the condominium, the Fenwyck property, then occupied by Linda and her husband, James Driftmyer. Linda and James agreed to sell the Fenwyck property to Kaiser for $65,000. Kaiser, however, only agreed to pay $55,000, the proceeds from the sale of the Gibsonburg property, toward the purchase price of the condo. Caskey, therefore, agreed to pay $10,000 toward the purchase price of the condominium. Caskey testified that she and Kaiser agreed that she would have a life estate in the condominium, that Kaiser would pay the real estate taxes on the property and that she would pay the monthly association fees and maintenance on the property. Based on this understanding, Caskey relinquished her life estate in the Gibsonburg property upon its sale.
Prior to the closing for Kaiser's purchase of the condominium, an initial deed was prepared in which Caskey was granted a life estate in the condominium. Kaiser, however, convinced Caskey that having the life estate in writing would cost him a lot of money upon her death. Caskey, therefore, agreed to relinquish her life estate in the Gibsonburg property in exchange for Kaiser's promise that she could live in the Fenwyck property for the rest of her life. Linda Driftmyer testified that she too understood that this was the deal and stated that at the closing on the Fenwyck property, Kaiser stated in front of everyone that Caskey could live in the condominium for the rest of her life.
Caskey and Kaiser never entered into a written lease agreement. Rather, Caskey has lived in the Fenwyck property continuously since 1995, paying the condominium association fees and maintenance costs while Kaiser has paid the real estate taxes on the property. In September 2000, however, Joanne Kaiser, Caskey's daughter and Kaiser's wife, passed away. Thereafter, in June 2001, Kaiser initiated the present proceeding to evict Caskey from the Fenwyck property.
Based on the evidence presented in the trial below, the court concluded that there was no credible evidence that a month-to-month tenancy or tenancy at will had been created by agreement of the parties. Rather, the court found that Caskey had established the creation of a life lease in the property and that, pursuant to the doctrine of part performance, her interest was not barred by the statute of frauds. Finally, the court concluded that Kaiser's statute of frauds claim was further defeated in that Caskey had made a compelling case for promissory estoppel as she detrimentally relied upon Kaiser's promises. Under these circumstances, the court stated, to allow eviction of Mrs. Caskey would constitute a travesty of justice. Accordingly, the court denied Kaiser's request for an eviction. It is from that judgment that Kaiser appeals.
Kaiser's assignments of error are interrelated and therefore will be discussed together. Kaiser challenges the trial court's application of the doctrines of part performance and promissory estoppel to defeat Kaiser's claim that under the statute of frauds, he was entitled to evict Caskey from the Fenwyck property.
The statute of frauds is set forth in R.C. Chapter 1335. As expressed in R.C. 1335.04, the statute provides that no lease or interest in real property shall be assigned or granted except by deed or note in writing signed by the party assigning or granting it. Nevertheless, Ohio courts have recognized that the equitable doctrines of partial performance and promissory estoppel can remove an agreement covering an interest in real property from the operation of the statute of frauds. Saydell v.Geppetto's Pizza Ribs Franchise Sys., Inc. (1994), 100 Ohio App.3d 111,121. These exceptions exist "in recognition that the historical purpose behind the statute is to prevent the furtherance of fraud." McCarthy,Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993),87 Ohio App.3d 613, 623.
In Beaverpark Assoc. v. Larry Stein Realty Co. (Aug. 30, 1995), Montgomery App. No. 14950, the court cogently explained the doctrine of partial performance in relation to the statute of frauds: "In order to remove a contract from the statute of frauds pursuant to the doctrine of part performance, the party that is relying on the agreement must have undertaken `unequivocal acts * * * which are exclusively referable to the agreement and which have changed his position to his detriment and make it impossible or impractical to place the parties in statu quo.' Delfinov. Paul Davies Chevrolet, Inc. (1965), 2 Ohio St.2d 282, 287,209 N.E.2d 194. Thus, a party seeking to establish part performance must demonstrate that he has performed acts in exclusive reliance on the oral contract, and that such acts have changed his position to his prejudice.Geiger v. Geiger (Nov. 16, 1993), Montgomery App. No. 13841. Generally, in cases involving real estate contracts, courts require acts such as possession, payment of consideration, and improvements on the land in order to find part performance of the contract. Id." Finally, partial performance will only defeat the statute of frauds if monetary damages would be insufficient. Gleason v. Gleason (1991), 64 Ohio App.3d 667,676.
It is well established that the weight to be given the evidence and credibility of witnesses are issues left to the sound discretion of the trier of fact, whose findings are presumptively valid. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80. In the present case, the trial court found that Caskey has been in possession of the Fenwyck property since 1995, that in order to obtain the life lease in that property she relinquished her life lease in the Gibsonburg property and contributed $10,000 toward the purchase price of the Fenwyck property, and that she has paid the condominium association fees and maintenance for the property since she took possession of it. Kaiser testified that his understanding of the agreement was that in exchange for relinquishing her life estate and contributing $10,000 toward the purchase of the Fenwyck property, Caskey received a place to live for as long as Kaiser would allow and that he had the right to evict Caskey from the Fenwyck property whenever he wanted to, including immediately after she took possession if he so chose. The trial court found Kaiser's explanation of the parties' agreement to be not credible and found that the evidence did establish the creation of a verbal life lease which had been partially performed.
In light of the law as set forth above, the trial court properly concluded that Caskey's verbal life lease in the Fenwyck property was not barred by the statute of frauds. Caskey clearly established that in reliance on Kaiser's agreement to grant her a life estate in the Fenwyck property she relinquished her life estate in the Gibsonburg property, moved from the Gibsonburg property to the Fenwyck property, contributed $10,000 to the purchase of the Fenwyck property and lived in the Fenwyck property for six years. These "unequivocal" acts are all referable to the agreement. In addition, because Caskey gave up a life estate in the Gibsonburg property and spent $10,000, she changed her position to her detriment. Finally, because the Gibsonburg property has been sold and Caskey has relinquished her life estate in it, it is impossible to return the parties to their original positions or to provide Caskey with sufficient monetary damages.
Because we have concluded that the trial court properly removed the parties' agreement granting Caskey a life lease in the Fenwyck property from the operation of the statute of frauds under the doctrine of partial performance, we need not address Kaiser's argument that the court improperly applied the doctrine of equitable estoppel to defeat his claim.
Finally appellant argues that the trial court erred in admitting parol evidence to establish the terms of the verbal life lease where those terms conflict with the deed to the Fenwyck property. We disagree.
The parol evidence rule states that "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. The rule, therefore, "prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements." Finomore v. Epstein (1984), 18 Ohio App.3d 88, 89. In the present case, however, there was no written contract between Kaiser and Caskey which was contradicted by the parol evidence. Rather, Caskey asserted a right to live in the Fenwyck property for the rest of her life based on assertions made by Kaiser. This in no way contradicts Kaiser's ownership rights to the property as set forth in the deed.
Accordingly, the trial court did not err in denying Kaiser's claim for eviction and finding that Caskey had a life lease in the Fenwyck property. The five assignments of error are therefore not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Maumee Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., Richard W. Knepper, J., and Mark L.Pietrykowski, P.J., CONCUR.