**EILAND et al., Appellants,**

v.

**COLDWELL BANKER HUNTER REALTY, Appellee.**

[Cite as *Eiland v. Coldwell Banker Hunter Realty* (1997), 122 Ohio App.3d 446.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71369.

Decided Aug. 25, 1997.

448

*Cynthia D. Smith,* for appellants.

*Weston, Hurd, Fallon, Paisley & Howley Co., L.L.P., John M. Baker* and *John A. Albers,* for appellee.

PORTER, Presiding Judge.

Plaintiffs-appellants Reginald and Lesia Eiland appeal from a summary judgment entered in favor of defendant-appellee Coldwell Banker Hunter Realty, real estate broker, on plaintiffs' claims of fraud against the broker arising out of their purchase of a home with a leaky basement. We find no error and affirm.

On January 12, 1995, plaintiffs filed suit alleging breach of contract and fraudulent misrepresentation in connection with their purchase of a home located at 3610 Antisdale, Cleveland Heights, Ohio. Defendants named were the owner/seller of the property, Jean Kelly, and the real estate broker she listed the property with, defendant-appellee Coldwell Banker.

On July 2, 1996, after completion of discovery, Coldwell Banker filed a motion for summary judgment, alleging that there was no genuine issue of material fact implicating it in any fraudulent misrepresentations as to the condition of the property. Plaintiffs opposed the motion with their own brief and exhibits. Copies of depositions were filed in support of the motion. The facts that appear of record and from the summary judgment papers appear below.

On April 11, 1994, plaintiffs contracted to buy the Antisdale Road residence from owner Jean Kelly. Kelly had lived in the house for seventeen years. Coldwell Banker, through its agent Don Vargo, represented the seller Kelly during this transaction. The purchase agreement stated:

"(¶ 1) * * * [T]he property shall include the land, all appurtenant rights, privileges, easements, and all buildings and fixtures in their present condition * * * .

" * * *

"(¶ 10) This property has been examined by PURCHASER. There have been no representations, warranties or statements concerning the condition of said premises, the value of same, the improvements thereon, the use that can be made of said premises, or anything concerning the same other than what is included in this written Purchase Agreement upon which PURCHASER has relied."

Plaintiffs' real estate broker, L. Bland and Associates, and its agent, Lylia Bland, prepared the purchase agreement on its form, even though plaintiffs also agreed that Bland was also acting on behalf of Kelly according to the agency disclosure statement executed on April 11, 1994. Bland and Coldwell Banker were to split the seven percent realtor's commission fifty-fifty.

Plaintiffs acknowledged that neither Coldwell Banker nor its agent Vargo made any representations to them regarding the condition of the basement before execution of the purchase agreement. They also acknowledged that they were buying the property in its "as is" condition on April 11, 1994, per Paragraph 1 of the purchase agreement. Plaintiffs admitted that they never discussed any part of the purchase agreement with Coldwell Banker or Vargo and were aware that the purchase agreement contained no provision for a home inspection.

Plaintiffs also acknowledged receipt on April 11, 1994 of a residential property disclosure form as mandated by R.C. 5302.30. The statements contained on the residential property disclosure statement were made by Kelly and not Coldwell Banker or Vargo. A disclaimer to that effect stated: "The representations contained on this form are made by the owner and are not the representations of the owner's agent or subagent." Vargo apparently filled out the form with information supplied by Kelly, who signed it on October 25, 1993, over five months before the sale. Item D of the residential property disclosure form inquires:

"Do you know of any current water leakage, water accumulation, excess dampness or other defect with the basement/crawlspace?

"If Owner knows of any repairs, alterations or modifications to the Property or other attempts to control any water or dampness problems in the basement or crawlspace since owning the Property (but not longer than the past five years), please describe."

Kelly, the owner, answered "no" to these questions. Plaintiffs sought no additional information for the five-month gap from October 25, 1993 to April 11, 1994, the date of sale. The acknowledgment signed by plaintiffs stated their "UNDERSTAND[ING] THAT THE STATEMENTS ARE MADE BASED ON THE OWNER'S ACTUAL KNOWLEDGE AS OF THE DATE SIGNED BY THE OWNER."

Kelly's deposition transcript indicated affirmatively that she was not aware of any current water problems in the basement and did not know of any repairs, modifications, or alterations to the property to control water problems within the past five years. This same information was contained in the property disclosure statement, which she filled out with Vargo's help. Kelly did acknowledge, however, that water seepage had been a problem at one time due to roots of a tree that she had removed when she had the basement waterproofed over five years ago, but stated that she had put carpet down on the basement floor thereafter and there had been no recurrence of the seepage. She told Vargo about this history. Vargo's deposition was not taken.

The evidence also indicated that soon after the purchase agreement was signed, but before closing, the plaintiffs visited the property and expressed concern about water standing in the backyard after a storm. The plaintiffs acknowledged that they were told about the waterproofing by Kelly at that time. They brought in their own expert inspector about a week after they entered into the purchase agreement, who found "some signs" of past moisture in the basement. The expert also conducted a moisture meter test, which indicated low levels of moisture. Mrs. Eiland stated that the inspector's finding dampness in the walls did not deter them from going through with the purchase. Plaintiffs never obtained copies of receipts or other waterproofing papers from Kelly to pin down the date of the waterproofing. Nor did plaintiffs or their expert inspector ever look behind the sofa in the basement where the paneling was stained. Mrs. Eiland noticed the stains where the sofa had been and smelled an odor of dampness on the first day she received the keys and took possession, around July 1, 1994.

Plaintiff Reginald Eiland admitted that five to six years prior to purchasing the home, he had been a real estate broker for one year and participated in the sale and purchase of two homes on the behalf of two clients during that year.

On September 3, 1996, the trial court granted Coldwell Banker's motion for summary judgment. Plaintiffs voluntarily dismissed their claim as to Jean Kelly without prejudice, and this appeal ensued.

## JURISDICTION

Because of the concerns raised by the dissenting opinion and the recurring nature of the problem, we will first address the threshold issue of whether this case presents a final appealable order over which this court has jurisdiction. We hold that it does.

The plaintiffs originally named Jean Kelley and Coldwell Banker as defendants to their complaint. Coldwell Banker moved for summary judgment, which was granted. Plaintiffs voluntarily dismissed their claim without prejudice against Kelley pursuant to Civ.R. 41(A)(1)(a) and filed their notice of appeal herein from the summary judgment in favor of Coldwell Banker.

The dissent contends that the Civ.R. 41(A)(1)(a) dismissal is a nullity because the plaintiffs can dismiss only the whole action and not the claims against a single codefendant, *i.e.*, Kelley. Under the dissent's theory, the claims against Kelley are still treated as pending in the case below notwithstanding the plaintiffs' dismissal of them because there has been no "entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" within the meaning of

Civ.R. 54(B). We do not believe that it was ever the intent of Civ.R. 54(B) to preserve claims that have been voluntarily dismissed.

As a result, the majority has determined to treat the appeal as one from a final appealable order pursuant to guidelines adopted by this court *en banc* on December 3, 1993, which state as follows:

## "GUIDELINES FOR 54(B) APPLICATION TO DETERMINE FINAL APPEALABLE ORDERS

"1. Civ.R. 54(B) will be applied only where there are claims or actions against parties still presently pending in the trial court.

"2. If claims or actions against former parties were dismissed without prejudice at any time during the proceedings below, they will be treated 'as if no action had been brought at all' as to those parties. *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272 [8 O.O.2d 281, 283–284, 159 N.E.2d 443, 446]; *Johnston v. Cartwright* (C.A.8, 1965), 344 F.2d 773, 774.

"3. Where it appears that claims or actions are still pending between or among some or all of the parties below, are not otherwise moot, and the trial court has not properly certified that there is 'no just reason for delay' under Civ.R. 54(B), the case will be dismissed *sua sponte* with the right of reinstatement after obtaining a final appealable order."

It is important to review the history of this problem in this court to fully appreciate the reasoning behind the guidelines and the purposes served by their adoption.

In 1993, this court was confronted with a number of *sua sponte* dismissals of appeals which presented the following scenario, similar to the instant case:

Plaintiff sued defendants A and B. Defendant A obtained summary judgment in his favor. In order to appeal that judgment, plaintiff voluntarily dismissed defendant B without prejudice, pursuant to Civ.R. 41(A)(1)(a) and filed a notice of appeal from the summary judgment in favor of A.

Some panels of this court were *sua sponte* dismissing this kind of appeal on the theory that there was no "entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" within the meaning of Civ.R. 54(B). In other words, the claims against defendant B had not been finally adjudicated even though they were no longer pending in the lawsuit. The logical extension of this thinking meant that, even if a jury verdict was returned in favor of the plaintiff or defendant A, there was still no final appealable order. These dismissals basically relied on *Lee v. Gross Lumber Co.* (1989), 57 Ohio App.3d 52, 566 N.E.2d 696, in which the Ninth District Court of Appeals held that Civ.R. 41(A)(1)(a) could be

used only to dismiss an entire action as opposed to a claim against a specific party.

Because this court determined that this process thwarted what were otherwise worthy appeals and left the parties without a reviewable appeal, the court adopted the guidelines, which would allow the appeal to proceed on the merits. To promote uniformity among the different panels of this court, these guidelines were promulgated throughout the court for the benefit of the staff attorneys and law clerks and an article explaining them was published in the March/April 1994 issue of the Cuyahoga Bar Journal, "Law and Fact," at 19.

Finally, the guidelines received formal recognition and were expressly adopted and followed in one of our officially reported cases: *Klesch v. Reid* (1994), 95 Ohio App.3d 664, 671, 643 N.E.2d 571, 576, which stated as follows:

"We note that this court has adopted new guidelines concerning the application of Civ.R. 54(B) in determining final appealable orders since the two decisions in *Klesch I* [*Klesch v. Bims* (Apr. 2, 1992), Cuyahoga App. No. 60357, unreported, 1992 WL 67112] and *II* [*Klesch v. Bims* (Mar. 4, 1993), Cuyahoga App. Nos. 64049 and 64437, unreported, 1993 WL 58559]. Thus, if claims or actions against former parties were dismissed without prejudice at any time during the proceedings below, they will be treated 'as if no action had been brought at all' as to those parties. *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272, 8 O.O.2d 281, 284, 159 N.E.2d 443, 446. Therefore, pursuant to this court's present guidelines, appellant's appeal will be reviewed on its merits notwithstanding the dismissals of Klesch's claim against Bims and Bims' claim against Dominic Ozanne without prejudice."

This interpretation is apparently consistent with the practice of certain other Ohio district courts of appeals, to wit, the Third in *Sang Lak Choi v. Napoleon* (Jan. 30, 1991), Henry App. No. 7–90–3, unreported, 1991 WL 11207; the Fourth in *Comstock v. Ruthco, Inc.* (Sept. 9, 1992), Ross App. No. 1789, unreported, 1992 WL 226347; and the Twelfth in *Cronin v. Smith* (1994), 92 Ohio App.3d 606, 636 N.E.2d 420.

The dissenting opinion revisits the very subject the guidelines originally addressed and centers on the fact that Civ.R. 41(A)(1)(a) provides that "an *action* may be dismissed by the plaintiff without order of court (a) by filing a notice of dismissal at any time before the commencement of trial * * *." Therefore, the dissent argues, if only an *action* (*i.e.*, the whole case) can be voluntarily dismissed, this precludes the voluntary dismissal of *claims* against other defendants. Presumably, even a voluntary dismissal of a claim *with prejudice* serves no purpose and is a nullity.

The logic of this argument also leads to the conclusion that a Civ.R. 41(A) voluntary dismissal wipes out the summary judgment in favor of defendant A and that there is nothing to appeal from, *i.e.*, there is no final appealable order; the plaintiff has to start all over again with a new case, the saving statute and the statute of limitations permitting. This is a matter that was fully considered and appreciated at the time this court adopted the present guidelines as an interpretation of Civ.R. 54(B). The sense of the matter is: If a plaintiff can voluntarily dismiss the whole "action" without prejudice, he ought to be able to dismiss part of it or his "action" against some of the codefendants. This is consistent with the prevailing application by the federal courts.

At the time the guidelines were adopted, it was recognized that the identical procedure was followed (not uniformly) by a long line of federal cases which applied the similar counterpart language of Fed.R.Civ.P. 54(b) and 41(a)(1)(i). *Johnston v. Cartwright* (C.A.8, 1966), 355 F.2d 32, 39; *Plains Growers, Inc. v. Ickes–Braun Glasshouses, Inc.* (C.A.5, 1973), 474 F.2d 250, 254; *Terry v. Pearlman* (D.C.Mass. 1967), 42 F.R.D. 335, 337 ("action" used in Fed.R.Civ.P. 41[a][1] means all claims against any one defendant and not necessarily all of the claims against all of the defendants). See, *e.g., Pedrina v. Chun* (C.A.9, 1993), 987 F.2d 608, 609:

"The question presented by this appeal is whether Rule 41(a)(1) allows a plaintiff to dismiss without a court order fewer than all of the named defendants, or whether the Rule is limited to dismissals of the plaintiff's entire case.

"The answer to this question turns on our interpretation of the word 'action' in Rule 41(a)(1), and whether it refers to the entire controversy against *all* the defendants, or to the entirety of claims against any single defendant. Other circuits are divided on the question. * * *

"We agree with the First, Third, Fifth, and Eighth circuits that Rule 41(a)(1) allows a plaintiff to dismiss without a court order any defendant who has yet to serve an answer or a motion for summary judgment. Rule 41(a)(1) is 'designed to permit a disengagement of the parties at the behest of the plaintiff * * * in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case.' *Armstrong v. Frostie Co.,* 453 F.2d 914, 916 (4th Cir.1971). Permitting a plaintiff to dismiss fewer than all of the named defendants is consistent with this purpose."

This analysis was further endorsed by the leading federal practice and procedure authors as the sounder and better view supported by the weight of authority. 5 Moore's Federal Practice (2 Ed.1995), Section 41.06–1 at 41–95 to 41–97, and 9 Wright & Miller, Federal Practice & Procedure (2 Ed.1994), Section 2362 at 249–250.

The rationale of the guidelines is this: Once the summary judgment in favor of defendant A is entered, the claim of plaintiff against defendant A is merged into the summary judgment, *i.e.*, it is no longer a claim but a judgment, albeit inchoate or interlocutory; however, the plaintiff may make it a final judgment subject to appeal by voluntarily dismissing the rest of the action against defendant B. The voluntary dismissal "leaves the parties as if no action had been brought at all" as to B. *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 272, 8 O.O.2d 281, 283–284, 159 N.E.2d 443, 446. Therefore, the plaintiff is now free to appeal the summary judgment obtained by defendant A.

Although our dissenting colleague cites *Mgt. Investors v. United Mine Workers of Am.* (1979), 610 F.2d 384, 394, fn. 22, a Sixth Circuit decision, for the contrary position he espouses, later Sixth Circuit decisions follow the practice adopted by the guidelines in this district. See *Gen. Aviation, Inc. v. Cessna Aircraft Co.* (C.A.6, 1990), 915 F.2d 1038, 1040:

"The District Court granted summary judgment in favor of Cessna on all claims except for General Aviation's claim that Cessna had been unjustly enriched by failing to repurchase inventory. General Aviation voluntarily dismissed that claim thereby making the District Court's order final under Fed.R.Civ.P. 54(b)."

Likewise, in *Coffey v. Foamex L.P.* (C.A.6, 1993), 2 F.3d 157, 159 ("Plaintiffs voluntarily dismissed these remaining claims without prejudice on July 16, 1992, rendering the [March 4, 1992 summary judgment] order final and appealable.").

Given the foregoing circumstances and the conflicting decisions of other appellate districts cited herein and in the dissenting opinion, we believe that this case presents a fundamental jurisdictional issue that the Supreme Court should put to rest, and for that reason we will certify a conflict to the Supreme Court pursuant to Section 3(B)(4), Article IV, Ohio Constitution■ We shall now address the merits of this appeal.

Plaintiffs' sole assignment of error states:

"The trial court erred in granting appellee's motion for summary judgment."

Under Civ.R. 56, summary judgment is proper when:

■ "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary

judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

■ However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

■ In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Supreme Court of Ohio modified the summary judgment standard as was applied under *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Presently, under the new standard, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher* at 296, 662 N.E.2d at 276.

■ This court reviews the lower court's granting of summary judgment *de novo.* *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("[W]e review the judgment independently and without deference to the trial court's determination."). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

The essence of plaintiffs' appeal turns on whether the defendant broker, through its representative Vargo, misrepresented the condition of the premises or fraudulently induced the plaintiff to enter into a contract for the purchase of the property by concealing information about prior basement water problems. The

defendant claims that its agent made no misrepresentations, that he relied on Mrs. Kelly's information in filling out the residential property disclosure form for her, that the condition of the premises was open for all to see by a reasonable inspection, that the plaintiffs waived any professional inspection of the property before signing the purchase agreement, that they were fully advised about the waterproofing and brought in their own expert before closing, and that plaintiffs went ahead and bought the property in its "as is" condition with all its flaws, whatever they were.

■ Plaintiffs' claims of fraud by Coldwell Banker are without support in the record. An action in common-law civil fraud has five essential elements: (1) a material false representation or a concealment (2) knowingly made or concealed (3) with the intent of misleading another into relying upon it, (4) reliance, with a right to rely, upon the representation or concealment by the party claiming injury, and (5) injury resulting from the reliance. *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 711–712; *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90, 18 OBR 403, 405–406, 481 N.E.2d 1193, 1195–1196; *Schwartz v. Capital S. & L. Co.* (1978), 56 Ohio App.2d 83, 86, 10 O.O.3d 117, 118–119, 381 N.E.2d 957, 959.

The doctrine of *caveat emptor* continues to apply, as the Ohio Supreme Court noted in *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus:

■ "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor."

■ If a purchase agreement states that the buyer purchases real property in its "as is" physical condition, as it does here, the vendor has no duty to disclose latent defects. *Vecchio v. Kehn* (Aug. 18, 1994), Cuyahoga App. No. 66067, unreported, at 8, 1994 WL 449703; *Kossutich v. Krann* (Aug. 16, 1990), Cuyahoga App. No. 57255, unreported, at 4–5, 1990 WL 118705; *Kaye v. Buehrle* (1983), 8 Ohio App.3d 381, 383, 8 OBR 495, 497, 457 N.E.2d 373, 376. An "as is" disclaimer clause in a real estate purchase agreement bars suit for passive nondisclosure, but does not protect a seller from action alleging positive misrepresentation or concealment. *Vecchio; Kossutich, supra.* Where a purchase agreement clearly indicates that the property is purchased as is, a purchaser may not bring a claim for fraudulent nondisclosure for alleged water problems in the basement. *Gagne v. Jack* (Mar. 7, 1991), Cuyahoga App. No. 58141, unreported, 1991 WL 30284.

In *Layman,* the Ohio Supreme Court was presented with an issue of the sale of a house where the basement wall was bowed and bulging and steel I-beams were

used to support the wall. The Laymans sued, claiming that the failure of the sellers to disclose the bow in the wall constituted fraudulent concealment. However, the Supreme Court held:

"The non-disclosure in this case does not rise to the level of fraud for the reason that the defect here was not latent. It could have been detected by inspection." *Layman, supra*, 35 Ohio St.3d at 178, 519 N.E.2d at 645.

Additionally, in *Tipton v. Nuzum* (1992), 84 Ohio App.3d 33, 38, 616 N.E.2d 265, 268–269, it was held:

"Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises. Aware of a possible problem, the buyer has a duty to either (1) make further inquiry of the owner, who is under a duty not to engage in fraud, *Layman*, 35 Ohio St.3d at 177, 519 N.E.2d at 643, or (2) seek the advice of someone with sufficient knowledge to appraise the defect."

The *Tipton* decision also involved allegations of fraud in the purchase of a home with an alleged water seepage problem in the basement.

Plaintiffs herein had every opportunity to inspect the property. While the purchase agreement did not contain a provision for a professional home inspection prior to accepting title of the property, plaintiffs did have an expert home inspector view the property after they entered into the contract with Kelly. It is clear that they relied on their own inspection and that of their expert, not any misrepresentation by Coldwell Banker or Vargo. The inspection report of their inspector indicated that there were "some signs" of "past" basement dampness and that the moisture meter readings were low. Plaintiffs indicated that their inspector did not look at the basement wall behind the couches, as in his contract he indicated he did not move furniture.

Plaintiffs acknowledged, however, that there were warning signs of potential problems well within the scope of an ordinary inspection, including moving a sofa that was blocking a view of water stains on the basement paneling. Nevertheless, plaintiffs elected not to conduct a thorough inspection of the property. Nor did they seek to supplement the information obtained on the property disclosure form, even though the property had been vacant for some time prior to the execution of the purchase agreement.

Plaintiffs have failed to produce any evidence that Coldwell Banker or its agent Vargo made affirmative misrepresentations about the soundness of the basement or its lack of water problems. Even if Vargo did make representations about the condition of the basement, summary judgment in favor of Coldwell Banker was appropriate in the absence of evidence that Vargo knew such

statements to be false or recklessly made them. See *Vecchio v. Kehn, supra,* at 8:

"Fox [the broker's agent] stated to Castelli and the Vecchios that there were no water leakage problems in the basement and no other problems with the home that were not disclosed by Fox and the Kehns. These statements were not fraudulent misrepresentations, because appellants presented no evidence showing Fox knew the statements were false or was reckless in regards to the truth. See *Dennison v. Koba* (1993), 86 Ohio App.3d 605, 610 [621 N.E.2d 734, 737]; *Kossutich v. Krann* (Aug. 16, 1990), Cuyahoga App. No. 57225, unreported, at 6–7. Appellants had the burden to set forth facts showing Fox had such knowledge to prevent summary judgment."

Plaintiffs' sole basis for a fraudulent concealment and/or misrepresentation claim against Vargo and/or Coldwell Banker is the allegation that Kelly must have told Vargo about a current water problem in the basement and that this information was deliberately omitted from the property disclosure form. However, based on the record before us, there is no genuine issue of material fact that Kelly told Vargo that there was no current water problem with the basement, and that she had had no problem with water in the basement for the prior five years of her ownership. The property disclosure form correctly set forth the information that Kelly provided to Vargo about the property. See *Hampton v. Dieter* (Feb. 24, 1994), Cuyahoga App. No. 64601, unreported, at 15, 1994 WL 57734:

"Several references were also made to Murray's [the broker's] written flier advertising the merits of this home. Appellant's brief asks us to find the non-disclosure of the basement's flooding problem on that flier to be fraudulent misrepresentation. We decline to do so. Kay Murray testified that she was satisfied with Dieter's [the owner's] representations regarding the basement's conditions. Given the evidence of Dieter's use of the basement for storage purposes, Murray had the right to rely on Dieter's representations that her basement had no water problem, with the exception of the northeast corner. Her non-disclosure can not legally be the basis for fraudulent misrepresentation. A claim for fraudulent misrepresentation requires proof of an act of commission, not omission."

There is no evidence in the record that Vargo knew about a water problem that occurred within the last five years of Kelly's ownership. Thus, there is no evidence on the record to substantiate plaintiffs' claim that Coldwell Banker or Vargo knew about a current water problem in the basement.

 When a plaintiff claiming fraud in the sale of property has repeated opportunities to inspect the property, he will be charged with the knowledge of conditions that a reasonable inspection would have disclosed. This purchaser

bought the property "as is." There is no evidence that the broker, Coldwell Banker, or its agent fraudulently induced the purchase or misrepresented the condition of the property.

The court was correct in granting summary judgment for defendant Coldwell Banker. Plaintiffs' sole assignment of error is overruled.

*Judgment affirmed.*

DYKE, J., concurs.

O'DONNELL, J., dissents.

O'DONNELL, Judge, dissenting.

I respectfully decline to participate in deciding this case on its merits, since I believe this court lacks jurisdiction to do so.

The Constitution of the state of Ohio provides in Section 3(B)(2), Article IV:

"Courts of appeals shall have such jurisdiction * * * to review and affirm, modify, or reverse *judgments or final orders* of the courts of record inferior to the court of appeals * * *." (Emphasis added.)

Similarly, R.C. 2505.03(A) provides for review on appeal of "[e]very *final order, judgment, or decree* of a court." (Emphasis added.)

While a *judgment* determines all of the claims of all of the parties, R.C. 2505.02 provides: "An *order* that affects a substantial right in an action which in effect determines the action and *prevents a judgment* * * * is a *final order* that may be reviewed, affirmed, modified, or reversed with or without retrial." (Emphasis added.)

In *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381, however, the court stated in its syllabus:

"An *order* which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 *and Civ.R. 54(B)* in order to be final and appealable." (Emphasis added.)

Civ.R. 54(B) provides:

"[T]he court may enter *final judgment* as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay.* In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, *shall not terminate the action as to any of the claims or parties* * * *." (Emphasis added.)

Thus, in my view, a prerequisite to appellate jurisdiction is the issuance of either a *judgment* that determines all of the claims of all of the parties to an action, or an *order* that not only adjudicates fewer than all of the claims of all the parties to the action but also meets the requirements of both R.C. 2505.02, and Civ.R. 54(B). See *Noble v. Colwell, supra.*

The majority here jumps over these jurisdictional hurdles by noting that rulings have been made as to all parties and all claims, stating: "[T]he trial court granted Coldwell Banker's motion for summary judgment. Plaintiffs voluntarily dismissed their claim as to Jean Kelly without prejudice and this appeal ensued." Despite a request, however, the trial court did not add the Civ.R. 54(B) language "no just reason for delay" to the entry granting summary judgment to Coldwell Banker, and, without that language, the plaintiffs dismissed their claim against Kelly pursuant to Civ.R. 41(A)(1)(a).

In striking contrast to Civ.R. 54(B), which provides for the rendition of a final judgment as to a *claim* or a *party*, Civ.R. 41(A)(1)(a) provides for the dismissal of only an *action*. As used in both rules, "action" is a term of art which refers to all of the claims, rights, and/or liabilities of all of the parties in a particular case pending in the trial court. A comparison of Civ.R. 41(A)(1)(a) and Civ.R. 41(B)(1) highlights the distinction regarding a "claim" and an "action." Where the former permits the dismissal of only an "action," the latter permits the dismissal of either a "claim" or an "action."

This distinction has been judicially recognized in *Reagan v. Ranger Transp., Inc.* (1995), 104 Ohio App.3d 15, 660 N.E.2d 1234, and in *Lee v. Gross Lumber Co.* (1989), 57 Ohio App.3d 52, 566 N.E.2d 696. These decisions suggest that the dismissal of a claim pursuant to Civ.R. 41(A)(1)(a), that does not dismiss the entire action, is a *nullity* and that Civ.R. 54(B) or Civ.R. 15 would be the proper rules to use in these situations.

The conflict presented by the majority's decision is best highlighted by reviewing the holdings in *Lee* and *Reagan, supra,* and comparing those cases with the result in this case.

In *Lee, supra,* 57 Ohio App.3d 52, 566 N.E.2d 696, the headnote states:

"When a trial court grants summary judgment for the defendant on several but not all claims in a complaint, and the plaintiff then files a notice of voluntary dismissal of the remaining claim without prejudice under Civ.R. 41(A)(1)(a), the filing must be regarded as a motion to amend the complaint pursuant to Civ.R. 15(A). *Such a voluntary dismissal of fewer than all the claims does not render the trial court's judgment on the remaining claims final and appealable.*" (Emphasis added.)

In *Reagan, supra,* 104 Ohio App.3d 15, 660 N.E.2d 1234, the headnotes state:

"3. * * * Plaintiff may not dismiss *part of a cause of action* pursuant to rule that permits plaintiff to voluntarily dismiss entire action without prejudice. Rules Civ.Proc., Rule 41(A)(1)(a).

"4. * * * Voluntarily dismissing *claims* which were unresolved by judgment order pursuant to rule that permits plaintiff to voluntarily dismiss entire action without prejudice *was improper*, and thus *did not convert order into final appealable order.* Rules Civ.Proc., Rules 41(A)(1)(a), 54(B)." (Emphasis added.)

In the instant case, the majority believes that the plaintiff, by dismissing Kelly after the trial court granted summary judgment to Coldwell Banker, effectively circumvented Civ.R. 54(B) and created a final appealable order.

Since the record reflects that, following the summary judgment ruling, which did not contain the Civ.R. 54(B) language, the plaintiffs dismissed their claim against Kelly pursuant to Civ.R. 41(A)(1)(a), and the majority here considers that summary judgment ruling to be a final appealable order, a conflict exists between the Eleventh and Ninth Appellate Districts and the Eighth Appellate District as to the effect of a Civ.R. 41(A)(1)(a) dismissal following a summary judgment order: either it dismisses any remaining claim or party, creating a final appealable order, or it is a nullity.

Since the language of Civ.R. 54(B) specifies the manner in which the trial court may enter a final judgment as to fewer than all of the parties to the action, and since the trial court did not choose to add that specific language, pursuant to the Ohio Constitution, R.C. 2505.02, and *Noble v. Colwell, supra,* no final order exists for our review, and the purported Civ.R. 41(A)(1)(a) dismissal cannot change an otherwise interlocutory order into a final one.

The majority relies in part upon *DeVille Photography, Inc. v. Bowers* (1959), 169 Ohio St. 267, 8 O.O.2d 281, 159 N.E.2d 443, in which the court stated: "A dismissal without prejudice leaves the parties as if no *action* had been brought at all." While this statement is correctly quoted from that case, the majority overlooks two significant considerations regarding that decision.

First, *DeVille v. Bowers* did not deal with the dismissal of only a claim or a party from an action. Rather, the appellant there commenced a bankruptcy proceeding and then later dismissed the entire *action* without prejudice. The use of the term "action" in the previous quotation indicates that the court addressed the voluntary dismissal of an entire action, not merely a claim or party. *DeVille v. Bowers,* thus, does not stand for the proposition that the voluntary dismissal of a claim or party leaves the parties as if the dismissed claim or party had never been involved in the case.

Second, the court's decision in *DeVille v. Bowers* predates the adoption of the Ohio Rules of Civil Procedure and, thus, the facts of the case do not present a

dismissal pursuant to Civ.R. 41(A)(1)(a). This is significant because the issue in the instant case is *whether the language of Civ.R. 41(A)(1)(a)* provides for the dismissal of *only an entire action* or also for the dismissal of the claim of a party to that action.

Finally, the majority concludes that the "Guidelines for 54(B) Application to Determine Final Appealable Orders" are "consistent with the prevailing application by the federal courts." However, analysis of federally reported decisions reveals that at least one Sixth Circuit Court of Appeals decision is in conflict with the guidelines.

In *Mgt. Investors v. United Mine Workers of Am.* (C.A.6 1979), 610 F.2d 384, 394, fn. 22, the court stated:

" 'The language of both paragraphs (1) and (2) of Rule 41(a) speaks of the dismissal of an action. Consequently, some problem arises where a voluntary dismissal is sought of fewer than all the claims or all the parties involved in the action, i.e., a fragment of the action. The problem, though, is more technical than substantial.

" 'Where a plaintiff desires to eliminate an issue, or one or more but less than all of several claims, but without dismissing as to any of the defendants the problem may technically be regarded as one of amendment that is governed by Rule 15. * * *

" ' * * * But technically speaking, subdivision (a) of Rule 41 does not include dismissal of less than all the claims against any particular defendant.' 5 Moore's Federal Practice 41.06–1 at 41–92—41–93 (footnotes omitted)."

The court then resolved the issue by following Fed.R.Civ.P. 15. See, also, Judge Holschuh's opinion in *C. Van Der Lely N.V. v. F.lli Maschio S.n.c.* (S.D.Ohio, 1982), 561 F.Supp. 16.

Additionally, other federal circuits which have addressed this specific issue follow *Mgt. Investors, supra.* In *Gobbo Farms & Orchards v. Poole Chem. Co., Inc.* (C.A.10 1996), 81 F.3d 122, 123, the court stated:

"We disagree with Gobbo's contention that dismissal of its negligence claim prior to trial was a voluntary dismissal pursuant to Fed.R.Civ.P. 41(a)(1)(ii). That rule speaks to dismissal of an action, not just a claim within an action. Gobbo offers no authority, and we have found none, to support its contention that Rule 41(a) applies to dismissal of less than all claims in an action. In fact, other circuits and at least one district court in this circuit have specifically held to the contrary. *See Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1392 (9th Cir.1988); *Management Investors v. United Mine Workers,* 610 F.2d 384, 394 n. 22 (6th Cir.1979); *Exxon Corp. v. Maryland Casualty Co.,* 599 F.2d 659, 662 (5th

Cir.1979); *In re Wyoming Tight Sands Anti Trust Cases,* 128 F.R.D. 121, 123 (D.Kan.1989)."

See, also, *Gen. Signal Corp. v. MCI Telecommunications Corp.* (C.A.9 1995), 66 F.3d 1500, and *Environmental Dynamics, Inc. v. Robert Tyer & Assoc., Inc.* (N.D.Iowa 1996), 929 F.Supp. 1212, citing *Gronholz v. Sears, Roebuck & Co.* (Fed.Cir.1987), 836 F.2d 515, for the proposition that "Rule 41 applies to dismissals of entire actions, not to dismissals of claims." *Gen. Signal, supra,* 66 F.3d at 1513.

For these reasons, I submit that our court lacks jurisdiction to entertain this appeal and believe that the majority, for very practical reasons, has reached a conclusion that is in conflict with *Reagan* and *Lee, supra.* I therefore urge the majority to certify this case to the Ohio Supreme Court for resolution of this conflict and a clarification of whether Civ.R. 41(A)(1)(a) authorizes dismissal of a claim or party to a case or only dismissal of an entire action.