JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiffs-buyers Thomas and Michelle Yahner brought this fraud and breach of contract action against defendant-seller Mary Kerlin, alleging that she sold them a leaky and otherwise defective house and intentionally concealed that fact from them. In a written opinion, the court granted summary judgment to Kerlin, finding that the Yahners provided no evidence of active fraud and also failed to set forth evidence sufficient to create triable issues of fact on their remaining claims for relief. Our review of the briefs and the record convinces us that the court's opinion fully and thoroughly addressed the relevant issues and law, and that the court did not err by granting summary judgment. We therefore affirm the summary judgment for the reasons stated in the court's opinion, which we adopt and set forth as an appendix to this opinion.
Judgment affirmed.
PATRICIA ANN BLACKMON, J., and JAMES J. SWEENEY, J., concur.
 APPENDIX
STATE OF OHIO ) IN THE COURT OF COMMON PLEAS) SS: CUYAHOGA COUNTY ) CASE NO. CV-01-452376
THOMAS W. YAHNER, et al., ) )
Plaintiffs, ) )
vs. )) RULING ON MOTION FOR) SUMMARY JUDGMENT
MARY K. KERLIN, ) )
Defendant. )
Burt W. Griffin, Judge.
 {¶ 2} 1. In this action for breach of contract, fraud, and breach of warranty, plaintiffs Thomas W. Yahner and Michelle A. Yahner (hereinafter, "plaintiffs") allege that defendant Mary K. Kerlin (hereinafter "defendant") concealed certain defects in her property and residence which she sold to plaintiffs.
 {¶ 3} 2. This matter is before the Court on defendant's motion for summary judgment and plaintiffs' brief in opposition thereto.
 Undisputed Facts {¶ 4} 3. The following facts are undisputed:
 {¶ 5} 4. On or about March 7, 2001, the parties entered into a Purchase Agreement in which plaintiffs agreed to purchase a property and residence owned by defendant, located at 6410 Olde York Road, Parma Heights, Ohio 44130 (hereinafter, the "property"). (See Purchase Agreement attached as Exhibit A to the Complaint.) Plaintiffs were represented by a realtor from Realty One in the purchase of the property. The Purchase Agreement was prepared by plaintiffs' realtor.
 {¶ 6} 5. The Purchase Agreement included a purchase price of $165,500.00. It also included the following "as is" provision in lines 197-203: Buyer has examined the property and agrees that the property is being purchased in its "AS IS" PRESENT PHYSICAL CONDITION including any defects disclosed by the SELLER on the state of Ohio Residential Property Disclosure Form or identified by any inspections requested by either party. SELLER agrees to notify BUYER in writing of any additional disclosure items that arise between the date of acceptance and the date of recording of the deed. BUYER has not relied upon any representations, warranties or statements about the property (including but not limited to its condition or use) unless otherwise disclosed on this AGREEMENT or on the Residential Property Disclosure Form. The Purchase Agreement also stated at line 6 that "BUYER accepts [the property] in its `AS IS' PRESENT PHYSICAL CONDITION'".
 {¶ 7} 6. In connection with the Purchase Agreement, on January 28, 2001, defendant completed an Ohio Residential Property Disclosure Form in which she indicated that defects existed with respect to the roof, basement/crawl space, and "mechanical systems." (See Defendant's Exhibit C.)
 {¶ 8} 7. With respect to whether she knew of any "current leaks or other material problems with the roof or rain gutters," defendant checked the box marked "yes" and stated: "garage flat roof has been leaking." As to whether she knew of any "leaks or other material problems with the roof or rain gutters since owning the property (but not longer than the past five years)," defendant stated: "Leak in back sunporch. Fixed in 1998 by replacing door and theshold [sp.] in room above (small bedroom)."
 {¶ 9} 8. With respect to whether she knew of any "current water leakage, water accumulation, excess dampness or other defects with the basement/crawl space," defendant checked the box marked "yes" and stated: "West wall in corner leaked during heavy rains this spring 2000. Fixed gutter and has not leaked since."
 {¶ 10} 9. In addition, with respect to whether defendant knew of any "current problems or defects with the mechanical systems," defendant checked the box marked "yes" and stated: "Fireplace need fire wall redone. Had inspection when we bought in 1988 and chimney sweep told us not to use them `till fire walls are rebuilt."
 {¶ 11} 10. The Purchase Agreement contained an "inspection contingency" clause, pursuant to which the contract was subject to an inspection by a qualified inspector to be chosen by plaintiffs. After the inspection, plaintiffs had the option of removing the inspection contingency and accepting the property in its "as is" present physical condition, accepting the property subject to defendant's agreement to repair certain items, or terminating the Purchase Agreement. (Exhibit A to the Complaint at lines 111-120, 135-140.)
 {¶ 12} 11. Plaintiffs inspected the property twice before they purchased it. In February 2001, plaintiffs spent from two to three hours on a preliminary walk-thru inspecting the property with their realtor. (See Michelle Yahner depo. at 9; Thomas Yahner depo. at 8.) In March 2001, plaintiffs accompanied a professional home inspector in a three-hour inspection of the property pursuant to the "inspection contingency" clause of the Purchase Agreement. (Michelle Yahner depo. at 10-11; Thomas Yahner depo. at 8-10.) Also present were plaintiffs' realtor and Thomas Yahner's father. Plaintiffs spent about forty-five minutes in the basement during the home inspection. (Thomas Yahner depo. at 12.) After the inspection, plaintiffs accepted the property and signed an Amendment to the Purchase Agreement removing the inspection contingency. (Defendant's Exhibit F.)
 {¶ 13} 12. Plaintiffs allege that shortly after moving into the property, they found that it had a leaking basement, front foyer and rear porch, as well as a structurally damaged garage. (Complaint at ¶ 7.) Plaintiffs further allege that the defects were undisclosed by defendant and that the defects caused the home to require extensive repair work. (Id. at ¶¶ 8-9.)
 {¶ 14} 13. In their three-count Complaint, plaintiffs allege fraud (Count One), breach of contract (Count Two), and breach of warranty (Count Three).
 Issues {¶ 15} 14. In her motion for summary judgment, defendant argues that she is entitled to judgment as a matter of law because reasonable minds could conclude only that plaintiffs were aware of all alleged defects before they purchased the property. In addition, defendant argues that plaintiffs have failed to support their fraud claim by establishing that there was a false and material misrepresentation made to them and that they justifiably relied on any such misrepresentation. Defendant also asserts that the breach of contract and breach of warranty claims are without merit because plaintiffs purchased the property in an "AS IS" condition and under the theory of caveat emptor.
 Opinion A. Fraud (Count One)
 {¶ 16} 15. Plaintiffs allege that defendant intentionally failed to disclose known defects in the property and intentionally concealed such defects. (Complaint at ¶¶ 11-13.)
 {¶ 17} 16. In Layman v. Binns (1988), 35 Ohio St.3d 176, the Ohio Supreme Court stated that the doctrine of caveat emptor continues to apply in Ohio. The Court held in its syllabus: The doctrine of caveatemptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (Traverse v. Long (1956),165 Ohio St. 249, approved and followed.)
 {¶ 18} 17. In addressing the question of when a defect is open to observation or reasonably discoverable, the Ninth District Court of Appeals held that the issue is ultimately whether the facts were such that a reasonably prudent person would be put on notice of a possible problem. Tipton v. Nuzum (1992), 84 Ohio App.3d 33, 38. "Once alerted to a possible defect, a purchaser may not simply sit back and then raise his lack of expertise when a problem arises. Aware of a possible problem, the buyer has a duty to either to (1) make further inquiry of the owner, who is under a duty not to engage in fraud * * *, or (2) seek the advice of someone with sufficient knowledge to appraise the defect." Id.
 {¶ 19} 18. In order to show fraud, the plaintiff must establish five essential elements: (1) a material false representation or a concealment; (2) knowingly made or concealed; (3) with the intent of misleading another into relying upon it; (4) reliance, with a right to do so, upon the representation or concealment by the party claiming injury; and (5) injury resulting from the reliance. Gaines v. Preterm-Cleveland,Inc. (1987), 33 Ohio St.3d 54, 55; Finomore v. Epstein (1984),18 Ohio App.3d 88, 90; Schwartz v. Capital Savings and Loan (1978),56 Ohio App.2d 83, 86.
 {¶ 20} 19. If a purchase agreement states that the buyer purchases real property in its "as is" physical condition, the vendor has no duty to disclose latent defects. Eiland v. Coldwell Banker Hunter Realty
(1997), 122 Ohio App.3d 446, 457; Kaye v. Buehrle (1983),8 Ohio App.3d 381, 383. An "as is" disclaimer clause in a real estate purchase agreement bars suit for passive non-disclosure, but does not protect a seller from action alleging positive misrepresentation or concealment. Vecchio v. Kehn (Aug. 18, 1994), Cuyahoga App. No. 66067, unreported at 8; Kossutich v. Krann (Aug. 19, 1990), Cuyahoga App. No. 57255, unreported at 4-5.
 {¶ 21} 20. Here, the Purchase Agreement stated that plaintiffs were purchasing the property in its "`as is' present physical condition," therefore, defendant had no duty to disclose latent defects. However, defendant did have a duty to refrain from committing affirmative acts of fraudulent misrepresentation or concealment of such latent defects.Eiland, supra; see also Liotta v. Eckley (Jan. 13, 2000), Cuyahoga App. No. 75127, unreported at 2.
 {¶ 22} 21. Viewing the evidence in the light most favorable to plaintiffs, there is no evidence that defendant had experienced, or was aware, of any water problems in the basement, front foyer or rear porch other than what she disclosed on the Ohio Residential Property Disclosure Form. Furthermore, there is no evidence that defendant was aware of the alleged defect in the garage.
 {¶ 23} 22. The undisputed evidence shows that plaintiffs had an unimpeded opportunity to inspect the entire premises. Both Thomas and Michelle Yahner testified that they were not hindered from moving about the entire property during the March 2001 inspection. (T. Yahner depo. at 11-12; M. Yahner depo. at 9-10.) Although the house contained furnishings and belongings which blocked some areas from view, there were no locked doors and plaintiffs were not prevented from moving items out of the way. (Id.) Michelle Yahner testified that some furniture was, in fact, moved during the inspection. (Id.) In other instances, plaintiffs opted not to move obstacles. (T. Yahner depo. at 11-12.) Indeed, plaintiffs do not allege that defendant prevented them or their inspector from thoroughly inspecting the entire property. Inasmuch as plaintiffs had an unimpeded opportunity to examine the premises, absent fraud, plaintiffs cannot recover damages based on impairment of their opportunity to discover. Layman, supra.
 {¶ 24} 23. With respect to the basement, it is undisputed that defendant disclosed that the west wall of the basement had previously leaked. Defendant represented in the Ohio Residential Property Disclosure Form: "West wall in corner leaked during heavy rains this spring 2000. Fixed gutter and has not leaked since." (See Defendant's Exhibit C.) Plaintiffs do not allege that defendant made any other disclosures or representations regarding the basement. Rather, plaintiffs make general allegations in their brief of "hidden, latent defects which were not ascertainable by them" and that "culminated in a severely leaking basement," but, they do not specify the location of these defects, how the defects differed from what they observed in the inspection process, or why the defects were known to defendant but were not discoverable in the inspection process.
 {¶ 25} 24. In fact, plaintiffs admit that they observed dry stains on the west wall of the basement. (Plaintiffs' Affidavits, Exhibits C and D at ¶ 5.) In addition, the report of plaintiffs' own inspector should have alerted them to the possibility of leaking in the basement. The Confidential Property Inspection Report produced by plaintiffs' inspector indicates the presence of dry stains in the basement and a measurement of ten percent (10%) "active moisture per moisture meter." (Defendant's Exhibit D at 9.) The report notes: "Monitor dry stains. Past moisture per disclosure at [NW] — All walls dry per meter at time of inspection." (Id.) The report also notes that the basement contained extensive storage and limited visibility with respect to the walls and floor. (Id.) In addition, the report indicates the presence of a sump pump which was not operating and needed maintenance. (Id.) The corresponding notes states: "Exterior sump pit dry — not tested. Interior sump appears [abandoned]. Exterior pump wires pinched by cover." (Id.) This should have alerted plaintiffs to the possibility that there had been water problems in the past which required the use of a sump pump, that the basement could potentially leak in the future and should be monitored, and that there were areas of the basement which the inspector could not assess for leaking at all. See Gagne v. Jack (March 7, 2001), Cuyahoga App. No. 58141, unreported (buyer's action for fraudulent misrepresentation was precluded by caveat emptor where buyers bought the property "as is", basement contained electric sump pump, basement floor had visible cracks and walls had been freshly painted).
 {¶ 26} 25. Moreover, the inspection report contains the following remarks with respect to basement dampness which support an inference that, even if leakage existed when defendant made her disclosure statement, she was unaware of the leakage: Often * * * the visible signs on the interior of a basement which would indicate a past or present water problem are concealed. For example, an area may be painted over, or basement storage may be piled against a wall where a problem has occurred. If there has been a dry period before the time of the inspection, signs of past water penetration may not be visible. In such cases, the inspector may not be able to detect the signs of basement dampness or water penetration.
 {¶ 27} * * *
 {¶ 28} Basement Dampness is a problem that sometimes persists in spite of efforts made to correct it. Depending on the age and condition of the structure, you may not be able to correct it. Basement leaks maynot always leave signs, or may occur only in heavy rains or thaws.Covered or painted walls, floors and ceilings sometimes prevent detectionof dampness or leaks.
 {¶ 29} (Id. at 8.) (Emphasis in original.) Plaintiffs testified that they read the inspection report and relied on it in their decision to purchase the property. (Thomas Yahner depo. at 18; Michelle Yahner depo. at 22.)
 {¶ 30} 26. Based on the evidence, it could only be reasonably concluded that plaintiffs were on notice that there had been water leakage in the past, that the basement did not have a working sump pump system to keep water out, and that the basement exhibited active moisture. Plaintiffs were on notice that basement moisture problems can be recurring and may not always be detected by a home inspector. The inspection report alerted plaintiffs to the possibility of ongoing and future leakage problems, obliging them to ask defendant specific questions about the basement. See Gagne, supra, at *14 ("A seller of realty is not obligated to reveal all that he or she knows. A duty falls on a purchaser to make inquiry and examination.").
 {¶ 31} 27. More importantly, there is no evidence that defendant concealed the existence of defects in the property for the purpose of misleading plaintiffs. Plaintiffs have presented an expert report which they claim shows that defendant committed fraud with respect to the wet basement. (Plaintiffs' Exhibit F.) Plaintiffs' expert, Stephen Galli, R.A., an architect, states in his affidavit that he investigated plaintiffs' basement on March 9, 2002. According to his affidavit, he found: water leakage along cracks in the basement, several coats of foundation wall paint on the walls in colors differing from the current white paint, one crack in the wall partly filled with old paint, and horizontal cracks in the walls which had been repaired but "would have leaked if water of sufficient quantity was internal to the wall". (Id.) He also states that "OSB paneling" had been glued directly to an area of the masonry basement wall which matched the leakage area. (Id.) He further states:
 {¶ 32} An individual owning or occupying the home for over a year or so would experience and learn the locations in [sp.] extent of water leaks or other troubled areas in the home. Wood panels in the basement had been removed prior to the time that the Yahners took possession of the property because the wood panels were warped. The seller knew or should have known of the existence of this condition.
 {¶ 33} 28. This evidence does not create an issue of fact as to defendant's active concealment of latent defects. With respect to the wood paneling, Michelle Yahner testified that the paneling was down when plaintiffs looked at the house. (M. Yahner depo. at 43.) There is no reason to conclude that defendant attempted to conceal a latent defect by covering the leaky portion of the wall with wood paneling and thenremoved the paneling prior to plaintiffs' inspection of the property. Moreover, there is no evidence as to when defendant painted or repaired the walls in relation to her decision to offer the home for sale. Such evidence would be essential to establishing a claim of fraud.
 {¶ 34} 29. Finally, the expert's statement that defendant "knew or should have known" of the condition in the basement does not create an issue of fact as to fraud. A finding of fraud requires proof that defendant had actual knowledge of the alleged defect and purposely misrepresented or concealed it. The expert's opinion that defendant "knew" of the alleged defect is without foundation. Whether defendant "should have known" is an issue that would be relevant only in a negligence determination. It is not probative of defendant's actual knowledge and is irrelevant to a determination of fraud.
 {¶ 35} 30. With respect to the rear porch, plaintiffs have not identified the alleged defect except to make the conclusory allegation in their brief that the property had "rear porch leaks." Plaintiffs do not identify the exact location of the leak, the severity of the leak, or the source of the leak. There is no evidence that defendant made any false representations or knowingly concealed any defect in the rear porch. Defendant disclosed in the Ohio Residential Property Disclosure Form: "Leak in back sunporch. Fixed in 1998 by replacing door and threshold [sp.] in room above (small bedroom)." (See Defendants' Exhibit C.) In addition, plaintiff's home inspector reported the presence of "active leaks" in the roof of the house. (See Defendant's Exhibit D at 5.) Accordingly, plaintiffs were on notice of potential leaking from the roof.
 {¶ 36} 31. With respect to the rear porch or sunroom, plaintiffs' expert stated, "while repairs may have been made in that area, they were not properly done, and the seller knew or should have known about problems in this area." (Id. at ¶ 7.) As with the basement leakage, such statement is insufficient to create a jury question as to defendant's fraudulent misrepresentation. There is no evidence that defendant knew the repairs had been unsuccessful or that the roof continued to leak. The record is devoid of evidence showing that defendant made the repairs with a purpose to conceal the defect and mislead plaintiffs as to the condition of the roof. Nor is there evidence that plaintiffs questioned defendant regarding the condition of the porch roof.
 {¶ 37} 32. Furthermore, there is no evidence that defendant made any false representations regarding the condition of the front foyer. Plaintiffs state in their affidavits that prior to taking possession of the property, they noticed a dry stain around a light fixture, which was disclosed by defendant as having been fixed. (Plaintiffs' Exhibits C and D at ¶ 6.) In addition, the report of plaintiffs' inspector stated that the gutters of the house need maintenance and advised plaintiffs to "extend downspouts away from house." (See Defendants' Exhibit D at 5.) This should have alerted plaintiffs to the possibility of a water problem related to the gutters. Plaintiffs have produced no evidence that defendant was aware of the problem in the front foyer and knowingly failed to disclose the problem.
 {¶ 38} 33. The record contains no evidence that defendant was aware of any leakage in the property other than what she disclosed on the Ohio Residential Property Disclosure Form. Nor is there any evidence that defendant made any representations or misrepresentations to the effect that the property was free of water problems. Accordingly, the Court finds there is insufficient evidence of intentional misrepresentation or concealment to create a jury question as to the issue of fraud.
 {¶ 39} 34. Lastly, plaintiffs claim that soon after taking possession of the property, they discovered that the garage had severe structural damage. (Plaintiffs' affidavits, Exhibits C and D.) They further claim that prior to that time, when they had looked at the garage, they saw no evidence of the structural problems. (Id.)
 {¶ 40} 35. Plaintiffs' expert notes in his affidavit that: Concerning the property's garage, the rear load bearing masonry wall of the garage has an unsupported (hanging) section spanning approximately 9'8". The garage and shed is in danger of being seriously compromised. This is a serious hazard. Bearing on this unsupported masonry are five rafters holding up approximately 10 lineal feet of the garage's roof. The Yahners indicated that they were not aware of this condition because a short section of the wall between the doorway and a boxed wood compartment which was under the unsupported masonry was trimmed with boards. The Yahners also stated that the tip of the wood compartment extending out the backside of the masonry into the shed was covered by the seller's personal goods. This masonry and roof could have collapsed at any time. Mr. Yahner has installed a steel column next to the doorway securing the masonry overhead until proper repairs can be made, removing the immediate danger. The seller knew or should have known about this hazard in the garage.
 {¶ 41} 36. Plaintiffs contend that defendant should have disclosed the condition of the garage in the Ohio Residential Property Disclosure Form. Defendant checked the box marked "no" in answer to the question: "Do you know of any movement, shifting, deterioration, material cracks (other than visible minor cracks or blemishes) or other material problems with the foundation, floors, or interior/exterior walls?" (See
Defendant's Exhibit C.)
 {¶ 42} 37. The report from plaintiffs' inspector did not identify any problems with the garage structure. However, the inspector noted that storage and materials presented limited visibility. This is consistent with plaintiffs' testimony that defendant's stored belongings and a piece of wood nailed over the defective portion of the garage wall prevented plaintiffs from discovering the unsupported masonry. (T. Yahner depo. at 38.)
 {¶ 43} 38. Plaintiffs have not produced any evidence showing that defendant knew of the condition of the garage masonry wall. Moreover, even if defendant knew of the condition of the garage, there is no evidence that defendant knew that the condition was dangerous or constituted a defect in the garage. As stated supra, a finding of fraud requires more than expert testimony that an individual "should have" known about a fact. Here, no question of fact exists as to whether defendant had actual knowledge that the garage structure was defective and intentionally concealed that knowledge.
 {¶ 44} 39. In their brief in opposition, plaintiffs have cited multiple cases in which issues of fact were found as to the seller's fraud. However, a careful reading of these cases shows that they are easily distinguishable from the present case. For instance, in several cases, the purchase agreement did not contain an "as is" clause, therefore, the seller's mere failure to disclose known latent defects would constitute fraud. Accordingly, summary judgment in favor of the seller was inappropriate where the evidence showed the seller knew of the latent defect and concealed it. See Felty v. Kwitkowski (Nov. 2, 1995), Cuyahoga App. No. 68530, unreported (seller hid the fact that a support wall in the sub-basement was not placed on a concrete footer); Vitanzav. Bertovich (Dec. 2, 1993), Cuyahoga App. No. 64699, unreported (sellers represented that the basement was free of water leakage); Schulz v.Sullivan (1993), 92 Ohio App.3d 205 (sellers represented in purchase agreement that they were aware of no known basement leakage or other defects which would materially impair the fitness of the property for its intended use).
 {¶ 45} 40. In other cases cited by plaintiffs, the purchase agreement contained an "as is" clause and summary judgment for the defendant was improper because the record contained evidence that the defendant-seller made positive, fraudulent representations as to the condition of the property. See Harris v. Burger (August 24, 1995), Cuyahoga App. No. 68303, unreported (seller stated that the home was in "excellent condition," that there were no problems with the walk or foundation, and that two cracks in the rear basement wall had been repaired; buyers later discovered the garage slab and the foundation had structural defects as a result of improperly constructed streets in the development which had caused many homes to shift and led neighboring property owners to sell their homes over a period of years); Shumney v.Jones (July 2, 1992), Cuyahoga App. No. 63019, unreported (seller told buyer that the basement had never leaked); Lance v. Bowe (1994),98 Ohio App.3d 202 (in response to buyers' inquiries, seller orally assured buyers that although the fruit cellar had water problems, the rest of the basement did not leak). In this case, defendant made no such representations.
 {¶ 46} 41. Plaintiffs have also cited Apesos v. Kemper MechanicalServices (1995), 107 Ohio App.3d 307, in which the Court of Appeals for the Second District reversed a grant of summary judgment in favor of the seller on the issue of whether a latent defect existed which the seller had a duty to disclose. In the present case, defendant had no duty to disclose either open and observable defects or latent defects because the property was purchased "as is". The issue to be determined is whether defendant fraudulently misrepresented or concealed any latent defects that she was aware of. Accordingly, Apesos does not apply.
 {¶ 47} 42. Finally, plaintiffs' reliance on DiNapoli v.Lewandowski (Sept. 30, 1998), Summit App. C.A. No. 18897, unreported, is misplaced inasmuch as the Court of Appeals did not even address the merits of the purchasers' fraudulent concealment claim. Rather, the Court overruled the appellant/sellers' assignments of error on procedural grounds.
 {¶ 48} 43. Plaintiffs have not met their burden of showing that defendant knowingly took affirmative steps to misrepresent or conceal latent defects for the purpose of defrauding plaintiffs. Accordingly, there is insufficient evidence of fraud to create a genuine issue of material fact and defendant is entitled to summary judgment with respect to Count One of the Complaint.
B. Breach of Contract and Breach of Warranty (Counts Two and Three)
 {¶ 49} 44. Plaintiffs allege that defendant breached the Purchase Agreement by failing to disclose known defects in the property. (Complaint at ¶ 17.) In addition, plaintiffs allege that defendant breached certain warranties imposed by law by delivering possession of the property which contained undisclosed and concealed defects. (Id. at ¶ 20.)
 {¶ 50} 45. Plaintiffs have not identified which specific provision of the Purchase Agreement was allegedly breached by defendant. To the extent plaintiffs' claim is based on a theory that defendant promised that, to her knowledge, there were no significant defects, the Court finds that the Purchase Agreement in this case contained no such representation.
 {¶ 51} 46. Indeed, the contract has specific language placing the burden of discovering latent defects on plaintiffs. The "inspection" provision of the Purchase Agreement stated that the contract was subject to inspection by a qualified inspector of the buyer's choice. Subsequent to the inspection, the Purchase Agreement gave plaintiffs the option of removing the inspection contingency and accepting the property in its "as is" present physical condition, accepting the property subject to defendant's agreement to repair certain items, or terminating the Purchase Agreement. (Exhibit A to the Complaint at lines 111-120, 135-140.) It also contained the following cautions at lines 115-120: BUYER understands that all real property and improvements may contain defects and conditions that are not readily apparent and which may affect a property's use or value. * * * BUYER acknowledges that it is BUYER's own duty to exercise reasonable care to inspect and make diligent inquiry of the SELLER or BUYER's inspectors regarding the conditions and systems of the property.
 {¶ 52} 47. It is beyond dispute that plaintiffs had an unimpeded opportunity to inspect the premises, that plaintiffs obtained a complete professional inspection of the property, and that, with full knowledge of the inspector's findings, plaintiffs proceeded to accept the property and continue with the purchase. In doing so, plaintiffs retained the risk that the property contained latent defects.
 {¶ 53} 48. The case cited by plaintiffs in support of their breach of contract and breach of warranty claims is quite different from the present situation. In Harris v. Burger, supra, Cuyahoga App. No. 68303, the purchase agreement stated that "the seller represents, to his knowledge, the property has no latent, structural or other significant defects." Here, defendant made no such representation in the Purchase Agreement.
 {¶ 54} 49. Accordingly, defendant is entitled to summary judgment with respect to Counts Two and Three of the Complaint.
 CONCLUSION {¶ 55} 50. For the reasons stated above, the motion for summary judgment of defendant Mary K. Kerlin is hereby granted.
IT IS SO ORDERED.
DATE: January ___, 2003
 CERTIFICATE OF SERVICE
A copy of the foregoing Ruling on Motion for Summary Judgment has been forwarded by regular U.S. Mail this ___ day of January, 2003 to:
Daniel S. White, MICHAEL A. SHORE CO., L.P.A., for plaintiffs.
S. Robert E. Lazzaro, COSTANZO LAZZARO, P.L.L., for defendant.